No. 12,158.

## LUCAS v. COULTER ET AL.

PARTNERSHIP.—*Liability of New Partner on Contract Previously Made by Other Partner.—Ratification.—Novation.*—One who, after becoming a member of a firm, upon a sufficient consideration, expressly or by implication, adopts, while it is executory, a contract previously made by the other partner, and such contract is treated by both contracting parties as one made with the firm, the new partner will be liable the same as if it had been made with the firm in the first instance.

LANDLORD AND TENANT.—*Implied Warranty as to Fitness of Premises.*—Upon the letting of a house or store-room, there is no implied warranty that it is or shall continue to be fit for the purpose for which it is let. The tenant must determine for himself the safety and fitness of the premises.

From the Clinton Circuit Court.

*J. V. Kent, J. W. Merritt, O. E. Brumbaugh, J. Claybaugh* and *G. Sexson,* for appellant.

*A. E. Paige* and *S. O. Bayless,* for appellees.

MITCHELL, J.—In the complaint in this case it was alleged that the plaintiffs had leased certain premises in the city of Frankfort to the defendants, Weaver & Lucas, for the term of one year, from December 1st, 1882, at an annual rental of five hundred dollars; that they, as partners, occupied the premises, and that there remained due from them the sum of three hundred and thirty-three dollars and thirty-three and one-third cents for rent.

Lucas answered separately in two paragraphs:

*First.* The general issue.

*Second.* By way of counter-claim, in which it was averred that the room was occupied by himself and partner, under a verbal lease made between plaintiff and his co-defendant, Weaver, prior to the formation of the partnership; that the room was rented and occupied for the purpose of manufacturing and selling therein musical instruments, and that, on account of the defective manner of its construction, it was unfit for that purpose; that the roof and ceiling were so defectively

constructed as that from rain coming through the roof, and
from sand and other substances falling through the crevices
in the ceiling, their instruments were damaged in the sum of
five hundred dollars; that the plaintiffs, although notified,
neglected to repair, and that the defendants being unable to
occupy, delivered up possession of the premises in March,
1883.

Issue was taken by a reply in denial. Trial by the court;
finding and judgment, over a motion for a new trial, for the
amount claimed in the complaint.

The complaint counts upon a lease to Weaver & Lucas, and
for rent due under a lease to the firm. It is contended that
the proof shows a lease to Weaver alone, and that, in conse-
quence, neither the finding nor complaint is sustained by the
evidence.

The evidence tends to show that before the partnership was
entered into, the room, which was not yet completed, was
leased by parol to Weaver for one year at an agreed rental
of five hundred dollars. The time of payment was not defi-
nitely agreed upon. The term was to commence when the
building was completed. Before the building was completed,
Lucas informed the plaintiffs that he was about to become a
partner with Weaver. He inquired of them, and was in-
formed, concerning the amount of rent to be paid.

About the 1st of December, 1882, the building having
been completed, Weaver & Lucas formed a partnership and
took possession. The room was furnished with chandeliers,
hanging lamps, etc., by the firm. When the rent for the
month of December was paid, the plaintiffs suggested that
the next month's rent should be paid in advance. They were
informed by Weaver that Lucas objected to this. The rent
paid after that was paid by Lucas. Subsequently, Weaver, in
the presence of Lucas, informed the plaintiffs that he had sold
out to Lucas, and that they must look to him for the rent.
Lucas made no objection. Lucas also informed the plaintiffs
that he had bought Weaver's interest, and said further that if

he should conclude to give up the room before the end of the year, he would make some satisfactory arrangement with them about it.

It is true, as contended, that one partner can not be held liable on a contract made with the other before he became a member of the firm.   It is also true, that if, upon a sufficient consideration, the new member by implication adopts the contract before it is performed, and it is treated by both contracting parties as a contract, not with the partner with whom it was originally made, but as one made with the firm, the new partner will be liable, the same as if it had been made with the firm in the first instance.

The liability of an incoming partner in such cases is stated in Story on Partnership, section 153, as follows: " Indeed it may be generally stated that in all cases of this nature the primary consideration is not so much to ascertain between what parties the original contract was actually made, as it is to ascertain whether there has subsequently been, with the consent of all the parties, any change or extinguishment of that contract."

Where it is established that a contract made with one is, while it remains executory, adopted or ratified by the consent of both contracting parties, by a firm of which the one becomes a member, the old contract is thereby extinguished, and it becomes the contract of the firm, upon the principles of novation.   Applying these principles to the case under consideration, it results that upon the evidence the court may well have found that the verbal lease to Weaver was by consent extinguished, and that it was adopted, with the consent of plaintiff, by Weaver & Lucas, as a lease to the firm. This conclusion would seem almost irresistible when the fact is considered that upon the dissolution of the firm, Lucas, with the other liabilities, assumed the liability of the firm to the lessors.   In this view of the case, the evidence sustains the finding and complaint.

The court excluded evidence tending to support the coun-

ter-claim. The defendant offered evidence tending to prove that after the room was occupied for a time, the ceiling—having been made of green lumber—shrunk from the effect of heat. As it was not proposed to prove that there was any fraudulent misrepresentation or concealment concerning the state of the premises at the time of the letting, this evidence was properly excluded. Whatever may be said of cases in which fraud or concealment intervenes, it is clear that upon the letting of a house or store there is no implied warranty that it is or shall continue fit for the purpose for which it was let. Taylor Landlord and Tenant, section 382; Wood Landlord and Tenant, section 317.

In the case of *Purcell* v. *English*, 86 Ind. 34 (41 Am. R. 255), this question was considered. It was there held that no warranty would be implied as to the condition of demised premises, "and that the tenant must determine for himself the safety and fitness of the premises for use and occupancy."

The lessors, having come into no contract to keep the premises in repair, were not liable for damages arising from defects in the building, which the appellant sought to prove.

There is no error in the record, and the judgment is affirmed, with costs.

Filed Nov. 24, 1885.