## DAVIDSON v. FISCHER.

Where defendant leased to plaintiff a building with defective walls, plaintiff having full opportunity to observe and ascertain its ruinous condition, which was apparent to the most casual observer, in the absence of an express warranty, or of fraud or misrepresentations, defendant is not liable for damages resulting to plaintiff from the fall of the walls.

*Error to Superior Court of Denver.*

THE facts are stated in the opinion.

Messrs. BROWNE and PUTNAM, for plaintiff in error.

Messrs. STALLCUP and SHAFFROTH, for defendant in error.

GERRY, J.   This case was tried in the superior court of the city of Denver, and a judgment of nonsuit, on mo-

tion of the defendant, was entered by the court therein, and the order made by the court below is assigned as error in this court. The complaint substantially alleges that the defendant, in the month of July, 1880, demised and let to the plaintiff for the term of six months a certain store-room and cellar in the city of Denver, for a rental of $150 a month, to be paid monthly in advance; that plaintiff at once took possession of said building, and expended large sums in ·fitting up the same as a saloon, and occupied said building for this purpose until the 23d day of September, 1881, at which time said building fell and destroyed the property of plaintiff situated therein, of great value, thereby damaging her to the sum of $3,000; that the fall of said building was the direct result of the decayed and unsafe condition of its foundation, and that defendant was fully apprised, prior to the letting of said building, that its foundation walls were in an unsafe condition, and that this fact was not in any manner communicated to plaintiff, nor did she have any knowledge of the same prior to the fall of said building and the damage complained of. The answer specifically denied each material allegation of the complaint, and the cause came on for trial before a jury upon the issues thus joined. The evidence conclusively proved the letting to the plaintiff of the premises described; the expenditures by her made for fixtures, ornaments and furniture; her entry into the possession of the premises; the uses to which it was applied; its fall at the time named in the complaint; and the damage proximately resulting to the property of the plaintiff from the fall of said building. Several witnesses on the trial testified as to the condition of the walls of the said building, both before and after its fall; and two witnesses, George W. Brown and Fred Ohlman, testified that they had examined the foundation walls of said building at the instance of the defendant herein, and each reported to her that the same were unsound and unsafe before the let-

ting in this case. The evidence shows beyond controversy
that the plaintiff was not informed by the defendant, or
any one in her behalf, of the unsafe and unsound con-
dition of said building, prior to the time of her entry
therein; that the plaintiff, after entering into possession
of the demised premises, had full control thereof, and fre-
quently passed into said cellar, which was too damp to be
used, and also into the alley adjoining said building,
where witnesses claim that defects in the wall were
plainly visible, and had ample opportunities to observe
and ascertain the true condition of said building. Under
this evidence, and the issues herein joined, the court
granted the order of nonsuit, evidently acting upon the
theory that the evidence disclosed that whatever defects
existed in the walls or foundation of said building at the
time of letting were not latent, but, on the contrary, of
such a nature that the defendant must necessarily have
been apprised of their existence; and the parties dealt
with each other at arms-length. In this case there was
no express warranty that the building was safe and
adapted to the uses to which the plaintiff designed to
apply the same, and no actual fraud or misrepresenta-
tion. Therefore, if any liability exists, it does not arise
from any contract entered into between the parties, but
arises by operation of law from a neglect to perform a
duty which the law imposes.

In the lease of a store, dwelling or other building there
is no implied warranty that the building is safe, suitable
for habitation, or properly adapted to the uses to which
it is applied, nor that it shall continue fit for the pur-
poses for which it is demised. This principle and the
reasons for the existence of the rule are so well settled
that it is useless to discuss the same. *Vide Dutton v.
Gerrish*, 9 Cush. 89; *Mullen v. Rainear*, 45 N. J. Law,
520; *O'Brien v. Capwell*, 59 Barb. 497; *Doupe v. Genin*,
45 N. Y. 119; *Bowe v. Hunking*, 135 Mass. 380; *Libbey
v. Tolford*, 48 Me. 316. The courts, in the administra-

tion of justice, have recognized some exceptions to this well-known rule, and exceptions not based on deceit or misrepresentations, but purely on the doctrine of doing or omitting to do an act in violation of a legal duty or obligation. Thus, *Minor v. Sharon*, 112 Mass. 477, and *Cesar v. Karutz*, 60 N. Y. 229, were both cases in which apartments were let, infected with small-pox. In the first case the jury found that the lessor concealed his knowledge that the tenement was so infected, so as to induce the lessee to hire and occupy it. In the latter case it does not appear that there was any intentional concealment, and the decision rests upon the failure of the defendant to disclose the fact that the tenement was so infected. Says the court in the case of *Bowe v. Hunking*, 135 Mass. 380: "When a house is infected with small-pox, the danger to life is from a cause that cannot be discovered by the tenant from any examination he may make. It is obvious that there may be other concealed sources of mischief about the house which no examination can discover. Spring-guns might be set in it; traps or other contrivances might exist, which would injure the most careful occupant. If the landlord knew of such, it might be held to be his duty to give such information to the tenant. Such traps or contrivances are not merely a want of repair; they are in a sense active agents of mischief, which no tenant would expect to find, even in a decayed and ruinous tenement." It is not settled how far the exception to this general rule may extend, and we do not feel called upon in this opinion to define its limits, for the case at bar does not fall within the exception. The ruinous condition of the wall in this case was not a latent defect, one of which it was the legal duty of the lessor to apprise the lessee, for from the evidence it was patent to the most casual observer. The cellar, at the time of the letting, was so filled with water as to be unfit for use, and the walls of the building were literally crumbling away. The witness Fred Ohlman

examined the demised tenement in this case before the letting, and testified upon the trial of the case in the court below, as follows: "*Question.* How did you go to work to examine the walls? *Answer.* Well, I could examine that from the outside. I need not go inside. The outside walls were crumbling out. *Q.* You discovered that by going through the alley on the outside? By looking at it? *A.* Yes, sir. *Q.* Did you dig in it? *A.* No, I examined here and there. It was all about a foot above the ground in the alley there. The brick was all under water. *Q.* So you did not have to make any careful examination to see it? *A.* No." This is the evidence introduced by the plaintiff, and is not in conflict with any other evidence introduced in the cause, and therefore the plaintiff is bound by the same. Buildings of every description are let in all kinds of conditions, and the law exempts landlords from liability from injuries caused by defects in such buildings, in the absence of any warranty, and where there is no fraud, misrepresentation or deceit. When the tenant is permitted to examine fully the condition of the tenement sought to be leased, and any defects existing therein are patent, then the rule of *caveat emptor* applies. Judgment affirmed.

*Affirmed.*