Thomson, P. J.
The appellants were plaintiffs, and the appellees, defendants, below. The complaint alleged that about March, 1889, the defendants Rhodes and Marks, and one Rice, constructed a two-story building, known as the “ Exchange block,” in the city of Pueblo; that they purchased an interest in the wall of an adjoining two-story building, and used it as a party wall; that this wall rested merely on the surface of the ground, and was without sufficient thickness for a party wall, and was defective in construction: that in June, 1892, the defendant Fitch purchased the interest of Rice in the Exchange block ,- that in March, 1893, the plaintiffs leased Rom the defendants three rooms in the second story of the Exchange block, for the purposes of a job printing businessthat the wall and basement of the building were in the possession and general control of the defendants, and that the plaintiffs had no access thereto, and had no knowledge of the structure or condition of the wall; that the building was defectively erected, and the wall kept and maintained in a defective and unsafe condition, and allowed by the defendants to become and remain out of repair; that when the defendants leased the rooms to the plaintiffs, the building, by reason of the defective and dangerous condition of the party wall, was, and until its fall remained, defective, insecure and dangerous; that the defendants fraudulently and negligently concealed its defective and dangerous condition from the plaintiffs, and failed to notify the plaintiffs that it was defective or dangerous; that the defendants knew the condition of the wall and building, or could have known it, by the use of ordinary diligence, and that it was unknown to the plaintiffs; and that in consequence of the negligence of the defendants, the wall gave way on July 27, 1893, and the building fell and caved in, injuring an<J destroying the property of the defendants, contained in the leased rooms.
*247 A demurrer to the complaint for want of facts sufficient to constitute a cause of action, was overruled, and the defendants answered, admitting the construction of the Exchange block by Rhodes, Marks and Rice; the use of the wall of the adjoining building as a division wall, and the purchase by Fitch of Rice’s interest in the building, but denying all the allegations concerning the defective condition, or knowledge on their part of a defective condition, of the party wall and the building, and concerning the negligence of the defendants in constructing or maintaining the building or the wall; and averred that such condition, if it existed, was fully open to the plaintiffs, and easily discoverable by them. The answer further alleged that the collapse of the building was not in consequence of any negligence of the defendants in the construction or maintenance of the building, but because of an unprecedented flood in the Arkansas river through the city of Pueblo, whereby a large part of the city, including the building in question, was inundated.
Upon the evidence introduced by the plaintiffs at the trial, judgment of nonsuit was, at the defendants’ instance, entered against them, and they appealed.
If there was enough in this evidence to sustain a verdict against the defendants, the case should have been submitted to the jury, and the nonsuit was improper; but if there was not, there was nothing to submit, and the court only performed its duty in entering the judgment. We must therefore see what the evidence was.
It conclusively appears that when the building was wrecked, there was a flood, which, coming over the low ground, penetrated the cellar of the adjoining building, called by the witnesses, “ the Merrill building,” from the rear, and filled the cellar to about three fifths of its height. For some reason no water ran into the basement of' the Exchange block. After the water had come into the Merrill cellar, and had risen to the height mentioned, a portion of the division foundation fell outwards into the basement of the Exchange block, causing the collapse in consequence of which the plaintiffs’ dam *248 age was sustained. The witnesses all agreed that it was the lateral pressure of the water on the Merrill side, and which was met by no corresponding resistance on the other, that caused the wall to break down. There was only one witness who professed any knowledge of the manner in which the wall had been constructed, and his knowledge was gained from an examination made the morning after the accident. He said the wall was eighteen inches thick, and that its thickness was sufficient; but that on the Exchange block side, the stones were small, and the bond not strong, and he would not consider it safe for a party wall. He said, however, “ It is hard to judge a wall from The outside, or tell how far the small stones went through, or its strength, because it is all filled with mortar. The character can be determined by putting in joists.” He stated that the joists were all in the brickwork and none in the foundation. He said that his impression was that it was almost a miracle that the Merrill building stood with that kind of a wall until the flood came. The opinions of the witnesses varied a little as to whether an ordinary eighteen-inch wall would withstand the pressure of a volume of water filling the basement of the Merrill building, with no water in the basement of the Exchange block, the weight of opinion being that it would not. The testimony was that, except under unusual conditions, foundations were not built to withstand lateral pressure. It was testified that if the wall was faced and bonded on one side, and not on the other, a practical workman would notice the fact by looking at the wall; it was also testified that the contractor who built this wall, was a good contractor, and understood his business. A witness stated that the brick above the stone foundation looked soft. The foregoing is the substance of the evidence, in so fair as it affects any question in the case.
If, upon this evidence, a jury had found that there were defects in this wall, resulting from careless or improper construction, although the proof is far from satisfactory, we are not prepared to say that we would disturb their verdict; but the question of the liability of the defendants for the damages *249 occasioned by the collapse, would be unaffected by the finding. The wall might have been as insecure as the complaint alleged it to be,, without imposing upon the defendants a responsibility for loss occasioned by its fall. To fasten such liability upon them, something more must appear than the mere fact that the wall was improperly built. There is no implied contract in a lease that the building let is well constructed, or safe, or reasonably fit for occupation, or that it will continue in habitable condition. Davidson v. Fischer, 11 Colo. 583; Lucas v. Coulter, 104 Ind. 81; Doyle v. U. P. Ry. Co., 147 U. S. 413; Taylor’s Landlord and Tenant, § 381. However, an obligation rests upon the landlord not to expose his tenant to danger, from defects in the building the existence of which is known to him, but not to the tenant; and if, to his knowledge, at the time of the leasing, the condition of the building is such as to render it unsafe, it is his duty to disclose the state of the premises to the lessee, unless the lessee is himself acquainted with it. And to charge the landlord with responsibility for his failure to make the disclosure, it is not necessary that his knowledge should be actual. If his want of actual knowledge is simply the result of his own negligence, knowledge will, nevertheless, be imputed to him. The same observation applies to the tenant ; for if he has equal means of information with his lessor, then his entry into dangerous premises, and the consequent loss or injury which he sustains, are attributable to his own negligence. In such case the rule of caveat emptor applies; the tenant assumes the risk, and no liability attaches to the landlord. Cowen v. Sunderland, 145 Mass. 363; Carson v. Godley, 26 Penn. St. 111; Krueger v. Ferrant, 29 Minn. 385; Wilcox v. Hines, 46 S. W. Rep. (Tenn.) 297.
But we do not agree with the learned counsel for the defendants that the evidence shows that this foundation wall was as well open to observation and judgment by the plaintiffs as by the defendants, or that a want of-knowledge of its condition is chargeable to the plaintiffs as negligence. Where, as in the case of Davidson v. Fischer, supra, a lease is taken *250 of the portion of the building where the dangerous conditions exist, the lessee will be chargeable with knowledge of defects which are patent, and unless he has fortified himself by an express warranty of the safety of the building, or unless his lessor, with knowledge of some defect which endangers the building, and which an inspection will not disclose, is guilty of fraud by concealing the defect from him, he will have no remedy against his landlord for a loss sustained in consequence of the unsafe conditions. But we do not believe that every lessee of a room in some upper story of a business block, must, at his peril, make an examination of the walls of the building from the basement upwards, to find whether they do not somewhere contain a defect in consequence of which damage may ensue to him. We think he has the right to assume that his lessor is acquainted with his own building, and would not knowingly introduce him into quarters which are dangerous by reason of conditions' existing in some remote part of the structure.
Having said thus much by way of preface, we are now to see whether in this case the evidence disclosed any fact upon which a liability of the defendants for the loss sustained by the plaintiffs, may be predicated. It appears from the pleadings that the wall in question was not constructed by the defendants. Two of them, in connection with another person, purchased an interest in it, after its erection, for the purpose of using it as one of the walls of a house to be built by them, and the other bought that person’s interest in the house after it was completed. Therefore the presumption of knowledge in them of the manner of the construction of the wall, which might arise from its erection by themselves, does not exist, and there is not a word of evidence that they ever derived such knowledge from any other source. Without actual knowledge there could be no fraudulent concealment, and the' only ground upon which a right of recovery against them could be based, must be a neglect, on their part, to ascertain the condition of the wall, and report it to the plaintiffs. Failing to discover what, by the exercise of rea *251 sonable: care, they might have known, would, under certain circumstances, be negligence, and, generally, where injury results from negligence, without the fault of the person injured, the negligent party is responsible, but, in order that it may be the duty of one to investigate, there must be something to suggest an investigation. It is not negligence to fail to discover a • concealed weakness in a wall where its appearance indicates soundness and strength. We shall therefore examine the evidence to see whether it disclosed any fact which would warrant a jury in finding the neglect of any duty by the defendants.
The condition of the brick wall which rested on the stone foundation is not in question. A witness who examined the premises after the wall fell, said that the bricks looked soft. This is hardly evidence that they were soft, and there was no evidence that the appearance of the wall when standing, indicated any insufficiency in the brick. But it is evident from the entire testimony that the cause of the collapse was the giving way of the stone foundation. If that had resisted the pressure, there is no reason for supposing that the entire wall would not have stood for an indefinite time. If faulty construction was responsible for the accident,' the fault was in this foundation; and as the plaintiffs’ damage would not have been sustained if the foundation had not broken, whatever negligence may be chargeable to the defendants, must be negligence in not discovering the weakness of the foundation. As the plaintiffs sustained no injury in consequence of any defect in the brick wall, it is immaterial whether the-bricks composing it were hard or soft.
Now the evidence falls considerably short of establishing that this foundation was not as well built as such foundations usually are. While, if the only question to be submitted had related to its actual sufficiency, a verdict that it was insufficient might have been suffered to stand, yet the rincertainty in which the evidence left that question, has an important bearing upon the other question, whether it carried such appearance of insufficiency as would charge the plaintiffs with *252 the duty of ascertaining its real condition. Two of the principal witnesses stated that foundation walls are usually built to withstand pressure from above, but that unless there are unusual conditions, they are not built to withstand lateral pressure. That there were any .unusual conditions which varied the rule in the case of this wall, was nowhere made to appear, and this testimony was not brought in question by any other witness. As it was not pressure from above, but lateral pressure, which broke the wall, then the wall down to the time when the accumulation of water against it pushed it out, had proved itself sufficient in the particular where sufficiency was required. It is possibly true that it might have done this, and still have been improperly constructed, and therefore unable to oppose the resistance to the water which a proper wall would have done; yet the fact that it answered the purpose of its construction, and required a force to break it, which, ordinarily, walls are not built with a view •of resisting, tends very strongly to exonerate the defendants from the charge of not knowing what it was their duty to know. Concerning the appearance of the foundation when it was standing entire, there was no evidence. The sole witness who examined it did so after it had fallen, and judged of its construction by the appearance of the fragmentary ends left standing. He said the stones on the side of the Exchange block wrere small, and that he would not consider the wall safe; but he also said that it would be hard to judge it from the outside, or tell how far the small stones went through, or the strength of the wall, because it was filled with mortar. While, by looking at it after it was broken, he was able to see wherein it was defective, yet the inference is unavoidable that if lie had seen it while it was standing he would have been unable to say, from its appearance, that it was insufficient or unsafe. Another witness said that if the wall was faced and bonded on one side and not on the other, a practical workman, upon looking at it, would notice the fact. He did not say what effect the want of bond would have upon the wall, but the evidence was that this wall was bonded *253 on both sides, although it was said that the bond was weak on the side next the Exchange blo.ck. One of the witnesses was an architect, and the other a builder. Now the plaintiffs were not experts, and were not bound to look at the wall with the eyes of experts. If it would be hard for an expert to judge from the outside appearance of the wall that it was unsafe, and if it required a practical workman to see whether it was bonded or not, a knowledge of its deficiencies, if any existed, could hardly be imputed to an unskilled observer. The witness, who examined the broken wall said that his impression was that it was almost a miracle that it stood until the flood came. We suppose he meant that it seemed to him unable to resist the superincumbent pressure, because, until the flood came, it had no other to resist, and his impression was formed after he had examined the broken wall; but the same witness said that if it had not been for the flood, in his opinion, the wall would not have fallen, and .that it would require an exceedingly strong wall to withstand a pressure of water all on one side. The witness’s impression, even if the fact accorded with it, is entirely unimportant. The plaintiffs sustained no damage on account of downward pressure, and whether the standing of the wall was miraculous or not, the fact remains that it did stand, and if the water had not pushed it out, the presumption is that it would have continued to stand.
We are unable to find in the evidence the existence of a single condition which would impose upon the defendants a liability for the damage sustained by the plaintiffs. No misrepresentation, no concealment, nothing in the nature of fraud, appears, and upon the facts shown a charge of negligence cannot be based. When the motion for a nonsuit was interposed, there was nothing for the court to do but sustain it, and there is nothing for us to-do now but affirm the judgment.

Affirmed.