## Henry Watson v. John H. Moulton.

1. Leases—*Covenant to Pay Rent in Lease Under Seal.*—A covenant to pay rent in a lease under seal, when there are no covenants to repair, can not be defeated by reason of the building becoming out of repair.

2. Landlord and Tenant—*Lessee Has No Relief Against Covenant Unless by Stipulation.*—It is a general rule of law that a lessee has no relief against an express covenant to pay rent unless he has protected himself by a stipulation in the lease.

3. Same—*No Implied Contract by Landlord that the Premises Are Tenantable.*—There is no implied contract on the part of the landlord that the premises are tenantable, or that they will continue so during the term, nor is he bound to repair unless he has expressly agreed so to do in the lease or contract of hiring, and a promise to repair, made after the lease is entered into, is a mere *nudum pactum,* and no liability exists on his part to make such repairs.

4. Same—*Defects in Premises.*—The landlord is not liable for defects existing in the premises when the lease was made, unless they were latent, and the landlord has been guilty of fraud or actual deceit in the letting.

**Appeal** from the Circuit Court of Madison County; the Hon. Silas Cook, Judge, presiding. Heard in this court at the August term, 1901. Reversed and remanded. Opinion filed March 3, 1902.

John F. McGinnis, attorney for appellant.

Levi Davis, attorney for appellee.

Mr. Presiding Justice Worthington delivered the opinion of the court.

Suit brought before a justice of the peace on the 23d day of November, 1900, by appellant, against appellee, for the balance of rent due appellant under a lease made by said parties on the 10th day of November, 1898, by which appellant leased to appellee a house on lot five on the west end

Watson v. Moulton.

of Bluff street in Alton, Illinois, for $25 a month, to hold the same for two years from the 12th day of November, 1898. Appellee vacated the premises on the 12th day of April, 1900, having lived in said house about seventeen months, and this suit was brought for the balance due for the unexpired term of seven months, amounting to $175.

There was no appearance by defendant before the justice, and judgment was entered against him for $175 and costs. From this judgment he appealed to the Circuit Court, where there was a trial and judgment against plaintiff, from which this appeal was taken.

Appellee defended upon two grounds : first, that owing to the escape of water from a defective pipe in the cellar, the ground caved in and settled, so that props did not support the girders; and also, that owing to this settling of the props, the house being on a bluff slanting toward the river, the retaining wall on the river side was liable to give way and that these conditions made the house unsafe; second, that appellant carried on blasting in a quarry near the house, that shook the building and shattered the nerves of the inmates, and caused stones and pieces of rock to fall so close to the house as to endanger those occupying it. These conditions appellee claims amounted to a constructive eviction.

Objections were made to the introduction of testimony as to the escape of water in the cellar, the settling of the props, and the liability of the wall to give way, upon the ground that the lease was under seal, with no covenants to repair or keep the building tenantable.

This objection was well taken. There was no claim that the execution of the lease was procured through fraud or misrepresentation, or by the concealment of latent defects. The lessor was not bound by it to keep the house in repair. There is nothing in the evidence to indicate that there were latent defects in its construction known to appellant, that unfitted it for a residence. The evidence shows in fact that appellee was familiar with the building, its location and its surroundings. He testifies :

" The house was built particularly for me. I protested against its being located where it was. During its construction I went down and looked at it frequently. * * * I saw the plans, and the rooms were fixed to my idea. * * * The house was there last night; the retaining wall is there. The wall did not go down, though I expected it to. * * * I could have rented the house at the time I went out, to Mr. Conners. I told him I would not rent the house to him. Mr. Watson (appellant) could have rented it to the same party if he had wanted to, but he wanted to hold me to the lease." And again, " I saw this house when it was being built; it is built on a slope, and the outside wall on the northeast corner down to secure ground is about 22 or 24 feet on the bluff side. The cellar is filled up with made ground on the river side, extending into the corner. The greatest fill on the inside of the wall was 14 or 15 feet until it got down to the corner. When the foundation was built the front wall caved in, and that is still cracked."

" During its construction I went down and looked at it frequently." Appellee's testimony makes it clear that there was no latent defect in the construction of the house that would make the lease voidable, or that would amount to a constructive eviction on account of its condition. At most, his testimony proves a condition that made him fear that the building was dangerous for occupancy, and needed repairs that would make it safe. His evidence shows that his fears were groundless, and that after the lease expired, it was still standing *in statu quo*, so far as the evidence discloses, and that when he left it, another tenant stood ready ·to go in under him for the unexpired term.

A covenant to pay rent in a lease under seal, when there are no covenants to repair, can not be defeated by reason of the building's becoming out of repair and untenantable. If the lessee desires to protect himself against such contingencies he must see that they are guarded in his lease.

" It is a general rule of law that a lessee has no relief against an express covenant to pay rent, unless he has protected himself by a stipulation in the lease." Smith v. McLean, 22 Ill. App. 454; Peck v. Ledwidge, 25 Ill. 109.

" There is no implied contract on the part of the landlord that the premises are tenantable, or that they will continue

so during the term, nor is he bound to repair unless he has expressly agreed to do so in the lease or contract of hiring, and a promise to repair, made after the lease is entered into, is a mere *nudum pactum*, and no liability exists on his part to make such repairs." Wood's Landlord and Tenant, Sec. 382; Lucas v. Coulter, 104 Ind. 81; Humiston, Keeling & Co. v. Wheeler, 175 Ill. 519.

"To the tenant, the landlord is not liable for a nuisance existing on the premises at the time when the lease was made, nor for the defects therein, unless they were latent, and the landlord had been guilty of fraud or actual deceit in the letting." Wood on Landlord and Tenant, *supra*, Sec. 921; Blake v. Ranouns, 25 Ill. App. 490.

Appellee's testimony tends to show that he vacated the building because of its condition. He testifies:

"When the cellar began to cave in, I called Mr. Watson's attention to it. He said 'All right, I will attend to it in a day or two.' I said, 'Mr. Watson, you must have that attended to right away or I will not stay in the house.' Well, then he sent some of his quarrymen to have it examined, and they pried up a couple of rocks and Mr. Watson said, 'There, you see it didn't amount to anything, it didn't show very much water.' He afterwards put three two-inch boards between the girder and the uprights, and he tore up the floor for quite a little space. I was not willing to risk the lives of my family to stay in it, so we got out of the house that night; and the next day it was just about in the same condition and I decided I would give it up; but to cap the climax, we had so much trouble from the quarrying."

And again in cross-examination:

" I said I could have rented it to Mr. Conners; I told him I would not rent the house to him. I said I had got out of the house because the cellar caved in. I called his attention to the fact that I did not advise him not to take it. I told him that the reason was that the cellar caved in and I was going to get out."

While appellee was on the stand he gave the quarrying of stone as another reason for vacating. It is apparent that the condition of the premises at the time that he complained to appellant, was the principal, if not the only reason then operating in his mind. If the quarrying of rock by appellant so close to his residence was then so

annoying and dangerous as to amount to a constructive eviction, it is fair to presume that he would have mentioned it when he complained of the caving in of the cellar, and said he would have to move out on that account.

If, then, the fact of the building becoming out of repair is not a valid defense against the collection of rent under the lease, this case must be reversed without reference to the other ground of defense, since the first ground is not only made prominent by appellee's evidence against the objection of appellant, but is also recognized by an instruction given for the defendant as follows:

" If the jury believe from the evidence, that a new frame dwelling house was situated on the premises in question and was built near the edge of a high, precipitous bluff, and that the foundation of the house was laid on new or filled ground, especially on that side nearest to said bluff, and that said house and premises were leased to defendant for the purpose of being occupied by him and his family as a dwelling place, and that after such leasing the plaintiff did such acts as destroyed the beneficial enjoyment by defendant and his family of said premises, for the purpose for which they were leased, and the cellar and foundation of said house, without negligence or acts of the defendant, began to settle and give way in such manner as to render said dwelling house unsafe to be occupied by defendant and his family, and the defendant thereupon vacated said premises, the plaintiff can not recover from defendant any rent for said premises from the time of such vacation."

Appellee's evidence, with this instruction, may have influenced the jury to find for appellee upon a defense that was not warranted in law.

In deciding this case we have not considered the defense of quarrying rock by appellant as amounting to a constructive eviction. But as the case must be remanded, it is proper to say that the third instruction, predicated upon the proposition that if the jury believed that at or before the time of leasing, the plaintiff had assured the defendant that he, appellant, " would not operate that part of the quarry next to said premises," should not have been given. Evidence of such statement was objected to as varying the terms of the lease. The objection was well taken and was

sustained, but afterward the witnesses, notwithstanding the objection, gave it in evidence. While there does not appear to have been a motion to strike out, the court should not have given an instruction which recognized it as competent and as a factor of defense to be considered by the jury.

For the reasons assigned the judgment is reversed and the case remanded.