WILLIAM L. LOWE, APPELLEE, v. CHARLES T. PAYNE, APPELLANT.

FILED JANUARY 13, 1922. No. 21683.

1. **Evidence:** DECLARATIONS OF LESSOR: SUITABILITY OF PREMISES. When a lease contains no warranty, express or implied, that the leased premises are suitable for the business or purpose for which they are to be used by the lessee, declarations by the lessor, made at the time of the execution of the lease, of their suitability for the lessee's business, in the absence of fraud, deceit or concealment, are not admissible in evidence.

2. **Landlord and Tenant:** LEASES: DUTY OF LESSEE. The rule of *caveat emptor* applies to leases of real estate, wherein the control passes to the lessee, and, in the absence of fraud, deceit or concealment, the duty devolves upon the lessee to examine the premises with respect to suitability for his business and with respect to safety.

3. ——: DEFECTIVE PREMISES: LIABILITY OF LESSOR. In the absence of fraud, deceit or concealment, a lessor is not liable in damages to the lessee for defects in a building which are plainly discernible, when liability therefor is not reserved in the lease.

4. ——: ——: CLOSING OF PREMISES BY MUNICIPALITY. In the absence of a provision in the lease therefor, and in the absence

of fraud, deceit or concealment, a lessor, who is without fault, is not liable in damages to the lessee arising from the closing of a part or all of the leased premises by the municipality, and the consequent eviction of the lessee, under an exercise of the police power by the municipality.

5. Evidence examined, discussed in the opinion, and *held* that the verdict is not supported by the evidence.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE.   *Reversed.*

*Fawcett & Mockett* and *Francis V. Robinson,* for appellant.

*Holmes, Chambers & Mann, contra.*

Heard before LETTON, DAY and DEAN, JJ., ALLEN and BEGLEY, District Judges.

DEAN, J.

Plaintiff sued to recover damages from defendant on two grounds: First, that he was induced by fraud and deceit to lease an alleged unsafe three-story brick business property in Lincoln from defendant; and, second, for a wrongful eviction of plaintiff by defendant after plaintiff had entered into possession of the premises under the lease. From a verdict and judgment for $1,742.40, defendant appealed.

Plaintiff was a dealer in automobiles and accessories, and in connection with his business he repaired cars. He rented the building in suit for use in his business. The lease was executed April 4, 1918, and by its terms was to run for a period of 10 years, beginning May 1, 1918, at a rental of $65 a month. Before executing the lease, however, plaintiff and defendant, according to plaintiff's evidence, went through the building and examined the first and second floors. He said he noticed at the time that the east wall was not plumb, but that defendant told him he had known the building for 25 years and that it was safe and suitable for plaintiff's business. No investigation was made by plaintiff of the foundation or basement either from the inside or from the outside.

Lowe v. Payne.

He said that defendant told him the basement was full of floor supports and trash and rubbish left there by a former tenant. Plaintiff charges that he relied upon defendant's statements respecting the safety and suitability of the building for his business and made no further investigation, and that, after the examination referred to, the parties executed the lease. It may be observed here that the lease contains an agreement that plaintiff shall "make all repairs on the premises such as he may require." Plaintiff contends that this clause referred to such repairs as he should find it convenient to install in his automobile business, while defendant contends that it imposed the burden on plaintiff, not only to make such repairs, but to repair the defects of which he complains. We do not, however, in view of our conclusion, find it necessary to decide the question.

May 1, 1918, plaintiff took possession of the building and put in certain repairs at an alleged cost of $624.88. A week before the expiration of the first year, namely, March 24, 1919, the city building inspector, upon examination of the building, served duplicate notices on plaintiff and defendant, wherein it was stated that the building, "known as number 2033, O street, is unsafe for the purpose for which it is being used, by reason of unsafe walls. You are therefore notified that I will close said building in thirty days if the defects set forth above have not been remedied." The inspector, called on the part of plaintiff, testified that the examination was conducted by the city engineer and himself. He said they found the walls were 16 inches out of plumb; that they did not go down to the foundation but examined the outside and inside walls, and that subsequently he served notice of the defective walls on the parties, to which reference has been made, and that the closure, pursuant to the notice, prevented plaintiff from conducting his business in the building. On the cross-examination he testified that he knew the building, and that he had noticed for 20 years, prior to the examination, that it was not plumb, but he

did not say to what extent during that time; that he could not see any difference in the walls at the time of the trial than they presented at the time of the inspection about a year before. Referring to the chimney, on the west side of the west wall, the witness said that it appeared to be plumb and was without cracks; that it was attached to the building "right up at the roof" and was not elsewhere attached thereto. Continuing, he testified: "Q. Your examination of that building then consisted of going there and looking at it and determining from your plumb-line, etc., that the building was out of plumb? A. Yes, sir.  *  *  *   Q. And that was all the steps you did take to determine that, was it not?   A. We examined the walls, both east and west walls and rear wall." He said that he found some small seam cracks in the wall about 30 feet from the rear.

The evidence of the city engineer, called on the part of plaintiff, was to the effect that he and the city building inspector made an investigation "of the walls of the building, particularly;" that the east and west walls leaned to the west at certain places; that around the lower portion of the walls, near the foundation, part of the bricks were broken off; that in some places an entire brick was out; that in his opinion the walls leaned uniformly throughout; that he agreed with the inspector that the building should either be repaired or closed. On the cross-examination he said that a person who went around the building and through the building could see the places where he had testified that the bricks were out. He said he had known the building 20 years and that for 10 years he knew that the walls bulged. Pursuant to the notice served by the city inspector the building was closed within the time therein specified.

A consulting engineer, called on the part of defendant, testified with respect to the condition of the building. He said that he examined it on the outside and the inside and that he discovered nothing in connection with its appearance, as affecting its safety, that was hidden or

obscure; that the bulge to the west, in both the east and west walls, was apparent to any person passing along O street; that the moment he stepped into the building he could see the bulge, and that it was almost identical in both walls. On the cross-examination he said that he made no measurements, but that the bulge varied possibly 12 inches in some places; that he could not say what caused it, but that if the foundation had settled the wall would also have settled and cracked, but that no crack was visible. With respect to the piers in the basement he testified that apparently they had not moved and appeared to be all right, and that the joists that rested on the piers and on the foundation had not settled.

Five or six disinterested witnesses, some of them former tenants, who knew of the building for from 5 to 20 years, testified, in substance, that any person who entered the building during the period of their acquaintance with it would at once observe the leaning walls, and that in all respects they remained unchanged through all the years. Two or more of these witnesses testified that they examined the building the morning of the trial and that the walls presented the same unchanged appearance. Some testified that a casual observation by a passer-by on the street would disclose the bulges in the walls, and some that they were as readily discernible from the rear as from the front of the building.

The fact is clearly established that the defects could have been discovered by plaintiff if he had made reasonable inquiry or examination. Plaintiff testified that the defects in the walls were observed by him when he first visited the building with defendant. It does not appear that defendant concealed the defects in the building, nor that he prevented plaintiff from making any examination that he might choose. *Davis v. Manning*, 98 Neb. 707; *Rankin v. Kountze Real Estate Co.*, 101 Neb. 174. The statements attributed to defendant by plaintiff, which were denied by defendant, respecting the condition of the building, or its adaptability to the use of plaintiff's busi-

ness, were mere expressions of opinion, or at the most, even if true, they were "dealer's talk" or "seller's talk." *Nounnan v. Sutter County Land Co.*, 81 Cal. 1; *Davidson v. Fischer*, 11 Colo. 583; *Franklin v. Brown*, 118 N. Y. 110; *Hamilton v. Feary*, 8 Ind. 615; *Walsh v. Schmidt*, 206 Mass. 405.

Plaintiff knew, or should have known, the type of building that was required for the business in which he was engaged. Defendant was not a builder, nor does it appear that he was learned in the science of engineering. He dealt in mattresses and bed springs. In *Williams v. McFadden*, 23 Fla. 143, 11 Am. St. Rep. 345, it is said: "A statement made by the vendor, which is tantamount to an estimate or opinion of the value, condition, character, adaptability to certain uses, etc., of such real estate, is not actionable unless the seller resorts to some fraudulent means to prevent the purchaser from examining the property."

The lease, the contract between the parties, contains no representation or warranty that the building was suitable for the purpose for which plaintiff leased it, nor was there any engagement on defendant's part that he would maintain the building for plaintiff during the term of the lease. 16 R. C. L. 772, sec. 268. In *Dutton v. Gerrish*, 63 Cush. (Mass.) 89, it is said: "Where a contract of hiring contains no warranty, express or implied, that the premises are fit for the purpose for which they are hired, evidence is not admissible of the declarations of the lessor to that effect, made at the time of the hiring." To the same effect is *York v. Steward*, 21 Mont. 515.

In 16 R. C. L. 775, sec. 270, the rule is stated: "In the absence of warranty, deceit, or fraud on the part of a landlord, the rule of *caveat emptor* applies to leases of real estate, the control of which passes to the tenant, and it is the duty of the tenant to make examination of the demised premises to determine their safety and adaptability to the purposes for which they are hired." And at page 779, in the concluding part of section 271, it is

said: "The liability of a landlord on account of a latent defect is not increased by the fact that the defect in a building was in the original construction. A landlord is under no duty to disclose to the tenant obvious defects in the premises, apparent to observation, especially where there is an equal opportunity for observation on the part of each party; and no liability is imposed on the landlord for his failure to make known such defects."

It cannot be maintained that plaintiff, as he contends, was evicted by defendant. The eviction complained of was under an exercise of the police power by the city authorities, and, in the absence of contract between the parties, any resulting damage arising therefrom cannot be attributed to the lessor. *Roth v. Adams,* 185 Mass. 341.

The items going to make up plaintiff's claim for damages, as alleged, consist of not only repairs installed, but as well for expenses attendant upon moving out, and the like, and for "the fair rental value of the premises" at the time of eviction. In view of the law applicable to the facts, and of our conclusion herein, we do not find it necessary to prolong the discussion on these and other alleged assignments of error.

We conclude that the verdict is not supported by the evidence. It follows that the judgment must be, and it hereby is,

REVERSED.