---

M. J. PICKERING & others *vs.* A. DAVIS WELD & another.

Suffolk.    May 31, 1893. — October 19, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Contract — Usage — Validity of Custom — Exceptions.*

A usage cannot override an express contract, nor can a usage be valid which is in contravention of an established rule of law.

A general custom of a port, that "after a vessel arrives at the port and goes to a wharf designated by the consignee, and due notice has been given to the consignee, and the cargo is taken off and distributed upon the wharf according to the marks and numbers, the care of the goods devolves upon the consignee," is valid.

At the trial of an action to recover a balance of freight money alleged to be due, under a charter-party, upon a cargo of hemp, the defendant sought to withhold

from such balance, by way of recoupment, the value of a certain quantity of hemp not received by him. The jury found that there was a general custom of the port of delivery, that "after a vessel arrives at the port and goes to a wharf designated by the consignee, and due notice has been given to the consignee, and the cargo is taken off and distributed upon the wharf according to the marks and numbers, the care of the goods devolves upon the consignee." There was evidence tending to show that, from the time the hemp touched the wharf, it was in the custody and control of the delivery clerk employed by the agents of the ship; that it was his duty to make actual delivery of the hemp to the persons who came for it, and to take receipts from such persons for the hemp so delivered; and that no one had the right to take any of the hemp from the wharf after it had been placed thereon without his permission. It appeared that the bales of hemp, when they reached the wharf, were distributed in different piles in different places under a shed according to his direction; but it did not appear that the plaintiff, either through the delivery clerk or otherwise, undertook the duty of watching the hemp by night, or gave the defendant any assurance that he would exercise over it any supervision in addition to his legal obligations. The defendant contended, upon the argument of exceptions in this court, that the existence of the alleged custom could not affect the rights of the parties, because it appeared that the plaintiff did not act in reliance upon the custom. The exceptions did not show that this point was called to the attention of the judge at the trial, and no instruction as to the legal effect of the acts of the delivery clerk was requested, and no question relating to it was presented to the jury. *Held,* that the court could not say, upon the exceptions, that the plaintiff assumed to perform a part of the duty resting upon the defendant under such circumstances that he was bound to the exercise of due care in so performing it, and that the defendant relied upon such due care on the plaintiff's part.

CONTRACT to recover a balance of freight money alleged to be due, under a charter-party, upon a cargo of hemp. The defendants sought to withhold from such balance, by way of recoupment, the value of a certain quantity of hemp not received by them. At the trial in the Superior Court, before *Dunbar,* J., the jury returned a verdict for the plaintiffs; and the defendants alleged exceptions, which appear in the opinion.

*M. M. Weston,* for the defendants.

*E. P. Carver,* for the plaintiffs.

ALLEN, J. The defendants' first exception was to the admission of the evidence of the custom. They contend that the custom, if it existed, was an illegal custom, because it was in violation of the rules of law. The presiding justice ruled substantially in accordance with the contention of the defendants upon the question as to what facts would in law constitute a constructive delivery of the hemp, and instructed the jury that, if only a constructive delivery had been shown, the duty would

still rest upon the plaintiffs to exercise ordinary care and diligence in preserving the property and keeping it safely, and he left it to the jury to find whether the alleged custom existed, and instructed them that, if they should find that the custom did exist, then the rights and duties of the parties would be governed thereby, and the plaintiffs would be under no duty in reference to the safety of the hemp after a constructive delivery of it had been made.

We are not called upon to determine whether in any respect this instruction was too favorable to the defendants. The question of the admissibility of the custom is directly presented, and this forms the principal question in the case.

A usage cannot override an express contract, neither can a usage be valid which is in contravention of an established rule of law. But it has often been held to be within the legitimate and proper scope of a usage of trade to regulate the time, place, and manner of the delivery of a cargo, when there is no express contract upon the subject; and under such circumstances the usage is deemed to enter into and form a part of the contract. *Miller* v. *Mansfield*, 112 Mass. 260. *Robinson* v. *United States*, 13 Wall. 363, 366. *Hostetter* v. *Park*, 137 U. S. 30. *The Boskenna Bay*, 40 Fed. Rep. 91, 95. According to all the decisions, the rules of law which would otherwise exist as to the beginning or end of the liability of a carrier may be modified to some extent by the course and usages of trade and business, though there may be a difficulty in defining by a general statement how far such modification may go. See *Judson* v. *Western Railroad*, 4 Allen, 520, 521 ; *Mansur* v. *New England Ins. Co.* 12 Gray, 520, 526 ; *Haskins* v. *Warren*, 115 Mass. 514, 535, 536 ; *Reed* v. *Richardson*, 98 Mass. 216 ; *Richardson* v. *Goddard*, 23 How. 28 ; *The Norway*, 2 Mar. Law Cas. 168. In the present case, the jury have found that there was a general custom of the port of Boston that " after a vessel arrives at the port and goes to a wharf designated by the consignee, and due notice has been given to the consignee, and the cargo is taken off and distributed upon the wharf according to the marks and numbers, the care of the goods devolves upon the consignee." The parties must be deemed to have contracted with reference to this custom. There is no such well established and general rule of law to the con-

trary that the usage can be said to be in contravention of it. Indeed, various decisions go far to show that such would be the rule of law in the absence of a custom. But we do not need to go so far as that. It seems to us quite plain that the custom was not open to objection on the ground of illegality. We cannot accede to the contention of the defendants, that the plaintiffs had the right, under the circumstances of this case, to place the goods in the custody of a warehouseman at the defendants' expense; it being stated in the bill of exceptions as a fact that a clerk of the defendants came to the wharf daily, generally twice a day, and examined the quality of the different lots of hemp bearing different marks, made inquiries as to the progress of the delivery of the cargo, and kept the run of the amount which was coming out of the ship, and one of the defendants also came to the wharf once or twice during said period to examine the quality of the hemp. The case does not resemble those of absent consignees.

The defendants further criticise the custom as not showing a course of dealing, but as being merely the adoption of a peculiar doctrine or rule of law; and they contend that the plaintiffs' witnesses merely testified to their opinion as to the rule of law. This criticism rests on the phraseology used to describe the custom, which was that under the circumstances stated " the care of the goods devolves upon the consignee." But the word " devolves," as used at the trial, obviously did not mean that the care of the goods rests upon the consignee as a matter of legal duty, but rather that such care passes as a matter of usage from the carrier to the consignee. An actual usage or practice of trade and business was contemplated and understood, and is plainly shown by a reference to the instructions given to the jury.

The defendants also contend that the existence of the alleged custom could not affect the rights of the parties because it is plain upon the undisputed facts of the case that the plaintiffs did not act in reliance upon the custom, and therefore the ruling of the court giving to it the effect stated in the bill of exceptions was erroneous. This point is not distinctly stated in the bill of exceptions, and it does not appear that the attention of the presiding justice was called to it at the trial. It rests upon the effect which should be given to the appointment and acts of the delivery clerk. The bill of exceptions says that " there was evi-

dence tending to show that from the time said hemp touched the wharf it was in the custody and control of the said delivery clerk, and that it was his duty to make actual delivery of the hemp to the persons who came for it, and to take receipts from such persons for the hemp so delivered, and that no one had the right to take any of said hemp from said wharf, after it had been so placed thereon, without his permission." The bill of exceptions distinguishes with care between facts which appeared, that is, facts which were conceded, and facts which there was evidence tending to prove. The delivery clerk was employed by the agents of the ship, and the bales of hemp, when they reached the wharf, were distributed in different piles or parcels in different places under the shed according to his direction. It does not, however, appear as a fact that the plaintiffs, either through the delivery clerk or otherwise, undertook the duty of watching the hemp by night, or gave to the defendants any assurance that they would exercise over it any supervision in addition to their legal obligations. It may be that the delivery clerk in the daytime performed some services beneficial to the defendants in addition to those which rested upon the plaintiffs as a matter of duty. No question of fact in relation to this was presented to the jury, and no instruction as to the legal effect of his acts was requested. There is nothing in the case to enable us to say, on the bill of exceptions, that the plaintiffs assumed to perform a part of the duty resting upon the defendants under such circumstances that they were bound to the exercise of due care in so performing it, and that the. defendants relied on such due care on the part of the plaintiffs.

*Exceptions overruled.*