ADDIE L. SHUTE vs. JOSEPHINE M. BILLS & others.

Suffolk. November 20, 1905. — May 14, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Landlord and Tenant. Negligence. Usage. Practice, Civil,* Exceptions.

If a leak in the gutter of a house can be found to be a hidden defect, the owner of the house is not liable to a tenant at will who is injured by reason of this defect unless it is shown that the owner knew of it or ought to have known of it at the time of the letting.

If the owner of a house occupied by a tenant at will after the beginning of the tenancy discovers a leak in the gutter of the house, he is under no obligation to tell the tenant of it, even if it could be found to have been a hidden defect at the time of the letting.

In an action by a member of the household of the tenant at will of a small dwelling house in Boston against the owner of the house for injuries alleged to have been caused by a leak in the gutter of the house, the plaintiff may prove a usage in Boston by which when an entire house is let without a lease in writing the owner does the outside repairs, including those of the roof, gutters and conductors.

In an action by a member of the household of the tenant at will of a dwelling house against the owner of the house for injuries alleged to have been caused by a leak in the gutter of the house, if there is evidence that the defendant had assumed the obligation of such repairs as might be needed in the roof and gutters, that notice of the alleged leak in the gutter had been given to the defendant's agent, who undertook to repair it, and that in spite of the repairs which he made the leak continued as before, the plaintiff, if shown to have been in the exercise of due care when injured, is entitled to go to the jury ; and, if the jury find that the defendant's agent repaired the gutter and that after the repairs the gutter continued to leak as before, they would have the right to infer that the work was done negligently.

The daughter of the tenant at will of a dwelling house who is an inmate of the house has the same right that the tenant has to maintain an action against the owner of the house for an injury caused by his negligence in making repairs which he had agreed to make.

In an action by a member of the household of the tenant of a dwelling house against the owner of the house, who had agreed to keep the roof and gutters in repair, for an injury alleged to have been caused by his negligence in repairing a leaking gutter in such a manner that after the repairs were made it leaked on the front door steps, where the water froze and caused the plaintiff to slip and fall, it appeared that the accident happened on the eighth of December, that the day had been warm and thawing but had grown cold at night, which the plaintiff did not know, that at a quarter before seven in the evening the plaintiff started to go out for the first time on that day, that the steps were covered with ice, that the plaintiff previously had noticed water coming down on the steps when it rained but had not seen any ice there, that as she stepped out of the door she could not see much of the steps, that as she stepped

upon the top step and had her hand on the railing her foot slipped and both feet went out from under her, and she slid in a sitting position down the entire flight of seven wooden steps and received the injuries sued for. *Held,* that there was evidence that the plaintiff was in the exercise of due care.

A usage in a city, that when an entire house is let without a lease in writing the owner of the house makes the outside repairs including those of the roof, gutters and conductors, is not unreasonable, and the question of the existence of such a usage when it is material properly may be left to the jury.

A usage in a city, that when an entire house is let without a lease in writing the owner retains control of the outside of the house including its roof and gutters, would be unreasonable and bad as contrary to the agreement of the parties and to the rule of law.

Where a landlord has not agreed to make repairs he is not liable to his tenant or to one having the rights of such tenant for an injury caused by a defect in the leased premises which existed at the time of the letting.

Where exceptions are sustained and there is to be a new trial it is the practice of this court to pass upon all the questions raised by the exceptions which seem likely to be material at the new trial.

TORT by the daughter of the tenant of one half of a double house numbered 2 on Cliff Street in that part of Boston called Roxbury, against the owners of the house, for personal injuries from falling and slipping down the front door steps when covered with ice. Writ dated November 14, 1902.

At the trial in the Superior Court before *Wait,* J. the plaintiff testified that she had lived with her mother in the house in question since April of 1901 ; that December 8, 1901, a Sunday, was a beautiful warm day, a thawing day ; that she had not been out during the day, but that about 6.45 P.M. she with her husband and mother started to go to church; that she was the first to go out; that as she stepped upon the top doorstep and had her hand on the railing her foot slipped and both feet went out from under her and she slid in a sitting position down the entire flight of seven wooden front steps and received the injuries sued for; that the cause of her fall was ice on the steps; that this ice covered the steps; that she thought it ran the whole length of the steps ; that previously she had noticed water coming down on these steps when it rained; although at no previous time had she seen any frozen water or ice there; that the water which was frozen into the ice on which she fell came from the gutter overhead, over the steps; that before the accident certain repairs were made on the outside of the house by an agent of the defendants; that " they patched the roof " and also cleaned the gutter.

In further description of the accident the plaintiff testified, that she opened the door and stepped in her usual way ; that it had been warm all day and she never thought of it freezing; that it was a dark night and she could not see very much of the steps as she stepped out from the door; that she could not see whether there was ice on the steps or not; that there was no light inside the house ; that both feet were on the step when she slipped and both went out together ; that she did not feel the ice the first step she took; and that she was " sure-footed."

There was evidence in regard to the making of repairs on the house by the defendants' agent and of a usage in Boston when an entire house is let orally for the owner to make outside repairs, which is described in the opinion.

The judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

*F. H. Noyes*, for the plaintiff.

*F. N. Nay*, for the defendants.

SHELDON, J.　The plaintiff with her husband and mother occupied a one family dwelling house owned by the defendants and situated in Roxbury, the house being hired by her mother under an oral arrangement with the defendants' agent.　Early in the evening of Sunday, December 8, 1901, while she was leaving the house by the front door, she slipped upon the top step, fell and was injured.　It had snowed shortly before, and the jury might have found that her fall was due to water having dripped during the day from a leak in a gutter overhead and frozen after sunset, leaving a thin skimming of ice upon the step.　She contends that the defendants are liable for her injuries, on the ground that this leak in the gutter constituted a concealed defect existing at the time when the defendants let the house, which they then knew or should have known, but of which they gave no information either to the plaintiff or to her mother, the tenant; and also on the ground that on its discovery after occupancy had begun the defendants' agent was notified and requested to repair it, but neglected so to do, although bound to make such repairs by express contract and also by contract implied from a general custom, by which they were bound to keep the roof and gutter in repair; and also upon the ground that the roof and gutter did not pass by the contract of letting,

but remained in the control of the defendants; and that having undertaken to repair, the defendants repaired the roof and gutter in a negligent manner.

1. Assuming without deciding that there was a leak in the gutter which might have been found to be a hidden defect, there was absolutely no evidence that its existence was known or ought to have been known before the letting to the defendants. But to sustain the action upon this ground it must appear that the defendants either knew or ought to have known of the existing danger. *Martin* v. *Richards*, 155 Mass. 381. *Cutter* v. *Hamlen*, 147 Mass. 471. *Cowen* v. *Sunderland*, 145 Mass. 363. *Bowe* v. *Hunking*, 135 Mass. 380. *Minor* v. *Sharon*, 112 Mass. 477. Even if the landlord should discover such a defect after the beginning of the tenancy, he is under no obligation to communicate it to the tenant. *Bertie* v. *Flagg*, 161 Mass. 504. The action cannot be maintained upon this ground.

2. There was evidence from Mrs. Tabor that after she had moved into the house, " when the roof leaked and run down through into the chambers, from the gutter on the front steps," she spoke to the defendants' agent about that, and he sent a man who put some new shingles and she thought pieces of tin on the roof and cleaned out some of the gutter. The defendants' agent also testified that he had had repairs made on the roof and the gutter, that the shingles of the roof had been repaired and the gutter cleaned out and put in order. The plaintiff's husband also testified that he saw a cleat which had been nailed to the thick outer edge of the gutter, but there was nothing to show whether this was or was not there before the beginning of the tenancy. The plaintiff's mother also testified that the defendants' agent promised when she hired the house to do " any repairing needed, anything within reason." The plaintiff also put in evidence against the objection and exception of the defendants that there was a known custom or usage in Boston by which when houses are entirely let without any written lease to a single tenant at will, the owner does the outside repairs, such as the roof and gutters and conductors. We cannot say that this evidence was incompetent, or that such a usage, if the jury found its existence to be proved, would be a bad one. See *Pickering* v. *Weld*, 159 Mass. 522; *Hutchins* v. *Webster*, 165

Mass. 439 ; *Tower Co.* v. *Southern Pacific Co.* 184 Mass. 472. Taking all the evidence together, we think that the jury might have found that the defendants had assumed the obligation to make repairs, at any rate such outside repairs as might be needed in the roof and gutters; that notice of the alleged leak in the gutter had been given to their agent, and that they, acting through their agent, undertook to repair this leak, but that in spite of the repairs which were made the leak continued as before. It is true that the plaintiff herself testified that no repairs were made upon the gutter; but the jury might have believed the testimony of the defendants' agent upon this question. In that event, the defendants' liability in this action would depend upon whether or not the repairs upon the gutter were made negligently. " The general rule in this Commonwealth must be considered as settled that a tenant cannot recover against his landlord for personal injuries occasioned by the defective condition of the premises let, unless the landlord agrees to repair, makes the repairs, and is negligent in making them." Lathrop, J. in *Galvin* v. *Beals*, 187 Mass. 250, 252, and cases there cited. If these facts are established, the plaintiff's rights to maintain this action would be measured by those of her mother the tenant. *Jordan* v. *Sullivan*, 181 Mass. 348. *O'Malley* v. *Twenty-Five Associates*, 178 Mass. 555. *Roche* v. *Sawyer*, 176 Mass. 71.

The only evidence that these repairs, if made by the defendants' agent, were made negligently was some testimony introduced by the plaintiff that after they had been completed the leak continued in the same manner and to the same extent as before. Doubtless the jury might have inferred from the testimony that no repairs were in fact made upon the gutter, but this was not the only possible inference. We are of opinion that if the jury found that such repairs were made, they then might find that the work done was ineffectual to stop the leak at all, and in view of the apparently simple character of what was needed to be done might have inferred from this that the work was negligently done; that the carpenter who had been sent to make repairs upon the roof and gutter did his work so negligently as not to stop the leak but to leave it as bad as before. They might have inferred from the fact that the leak was as bad as before that the work was improperly done. Accord-

ingly, for the reason that the jury might have found for the plaintiff upon this ground, if, as we think they might have done, they found that she herself was in the exercise of due care, the plaintiff's exceptions must be sustained.

3. There was no evidence that the defendants retained control of the roof and gutter; but the plaintiff asked one witness whether in houses which are let as this one was "there is any known and established usage or custom in Boston as to who shall retain control of the outside, yard, roof of the houses," and saved an exception to the exclusion of this question. The parties have treated the question as if a formal offer had been made to prove a custom by which in such cases the landlord retains control of the outside, including roof and gutters. But we think that the evidence was plainly inadmissible. It contradicts both the agreement of the parties and the rule of the law. Such a custom would be a bad one. *Boruszweski* v. *Middlesex Mutual Assur. Co.* 186 Mass. 589. *Menage* v. *Rosenthal,* 175 Mass. 358. *Benson* v. *Gray,* 154 Mass. 391. *Hedden* v. *Roberts,* 134 Mass. 38. *Commonwealth* v. *Cooper,* 130 Mass. 285. Moreover, if it were shown that the defendants did retain control of the roof and gutter, yet they could not be held liable upon that ground alone in this action, for it does not appear but that the gutter remained in as good condition as when it was let. *Moynihan* v. *Allyn,* 162 Mass. 270. *Quinn* v. *Perham,* 151 Mass. 162.

.  As there must be a new trial, we have passed upon all the questions raised by the exceptions which seem likely hereafter to be material. *Tully* v. *Fitchburg Railroad,* 134 Mass. 499, 505.

                                *Exceptions sustained.*