STANISLAUS GORSKI *vs.* CONSOLIDATED RENDERING COM-
PANY.

JUNE 12, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)    Landlord and Tenant.    Defective Premises.*

Defendant was the owner of a dwelling house, in front of which was a depression about 12 feet square and 4 feet deep with the wall of the house at the back and partly on two sides, with a picket fence about 3½ feet high on

the front and on the remainder of the two sides.  About in the center of this area was a barrel sunk in the ground so that only an inch or two of the rim extended above the surface; there was a spring the waters from which were received in the barrel; the water in the barrel was about two feet deep; there was a gate in the fence and from the gate leading down to the level of the spring were three wooden steps; there was a piazza on the front of a part of the house and the end of the piazza adjoined the area of the spring and overlooked it and was guarded on that end by a railing; the entrance to the tenement where plaintiff lived as a boarder with the person who hired one tenement in the house, passed over this piazza to the door of the house.  Plaintiff with his two young children had been living in the tenement for about three weeks; the lessee of the tenement had full knowledge of the spring, although he did not use it.  A child of the plaintiff about two and a half years of age was found drowned in the spring; at that time the gate in the fence in front of the spring was open; this gate was not very secure and had been in that condition for some time, but no complaint was ever made by the tenant to the landlord; it did not appear that the landlord ever made any agreement to make any repairs nor that the barrel was covered at any time, nor that the landlord retained any control of the yard or spring, but that the tenant had the sole use and control of the yard and spring and the right to make use thereof for himself and family and such persons as he invited upon the premises and into his house as boarders.
On above facts *held* that a direction of a verdict for defendant was proper.

(*2*)    *Landlord and Tenant.    Defective Premises.*

A landlord not under contract to repair is not as a general rule, responsible to the tenant for injuries caused by a defective condition of the demised premises, in the absence of any fraud or concealment on the part of the landlord as to their safe condition; but where the defects are not secret, but obvious, the tenant takes the risk of their safe occupancy.

(*3*)    *Landlord and Tenant.    Sub-Tenant.    Defective Premises.*

A sub-tenant has no greater right of recovery for defective premises than the tenant himself; he does not occupy by premission of the landlord and his rights in regard to injuries received from defects in the premises are governed by the same rules and are subject to the same limitations as the tenant's.

TRESPASS ON THE CASE for negligence.  Heard on exceptions of plaintiff and overruled.

PARKHURST, C. J.  This is an action of trespass on the case for negligence brought by the father of Helena Gorski, a child about 2 years and 7 months old to recover for the loss of her services during her minority and for burial expenses, it being alleged in the declaration that the defendant owned a dwelling house and land; that the plaintiff's child on the 18th day of April, 1917, was upon the land with the

knowledge and consent and at the invitation of the defendant; that it was the duty of defendant to keep its premises in a reasonably safe condition so that the child might not be injured; that the defendant did not exercise due care, etc., but kept and maintained on the premises a large barrel or hogshead sunk in the ground for the purpose of retaining spring water, which was uncovered, and unguarded to the knowledge of defendant; that the child, while in the exercise of due care stumbled and fell into the barrel and was drowned.

The case was tried January 23–24, 1918, before a judge of the Superior Court and a jury, and at the conclusion of the plaintiff's testimony and after the plaintiff rested his case, the defendant also rested its case and moved for the direction of a verdict in its behalf on the ground that the defendant was not, as a matter of law, liable for the death of the child; the motion was granted and by direction of the court a verdict for the defendant was rendered by the jury.    Thereafter plaintiff filed a motion for new trial which was denied, and thereafter filed its bill of exceptions, based upon the denial of its motion for a new trial and upon the direction of a verdict for the defendant; the case is before this court upon the bill of exceptions.

The exception based upon the denial of the motion for a new trial is not pressed before this court, the only exception argued being the one based upon the direction of a verdict for the defendant.

The facts disclosed upon the evidence are substantially as follows:    The defendant, on April 18, 1917, was and for a long time had been the owner of a three tenement house situate upon a large lot of land fronting upon Mineral Spring Avenue, a highway in the city of Pawtucket, R. I.; the house was located about 100 feet back from and fronting toward Mineral Spring Avenue; there were pathways leading across the lot from the street to the house, commonly used by the tenants to approach the entrances to the house. In front of the middle portion of the house and immediately

adjacent to the front wall thereof was a depression or area about 10 or 12 feet square and 4 feet deep, with the wall of the house at the back and partly on two sides, with a red painted picket fence about 3½ feet high on the front of the area and on the remainder of the two sides. About in the center of this area was a barrel sunk into the ground so that only an inch or two of the rim extended above the surface; there was a natural spring, the waters from which were received in this barrel and flowed out of it over one side; the water in the barrel was about 2 feet deep. There was a gate in the front portion of the red picket fence, and from the gate leading down to the level of the spring were three wooden steps. It also appears that there was a piazza on the front of a part of the house and that the end of the piazza adjoined the area of the spring and overlooked it, and was guarded on that end by a fence or railing. It also appears that the entrance to the tenement where the plaintiff lived as a boarder with John Urban, who hired and occupied one tenement in the house, passed over this piazza to the door of the house.

John Urban, a witness for the plaintiff, had hired a tenement on the second floor of this house, more than a year before April 18, 1917, and lived there up to the time of the accident with his family, consisting of a wife and three children; he also took boarders, and about three weeks before April 18, 1917, he took the plaintiff and his wife and two children as boarders, and they were living there as such at the time of the accident. It also appears that Mr. Urban had previously lived in a tenement on the first floor of the same house, and that he had full knowledge of the location and surroundings of the spring, and full opportunity to become acquainted with the same, although he says neither he nor his boarders had any occasion to use water therefrom as there was running water in the house.

(1) It appears that on April 18, 1917, about half past twelve (noon), the plaintiff then being away at his work, his wife and her child Helena Gorski were having their dinner in

the Urban kitchen; that the child left the table before her mother, and went out of the house; that a few minutes thereafter, there was an outcry from children in the front yard that Helena was in the spring; that another boarder, John Hawrilak, heard the outcry and ran out and found the child head down in the spring, took her out of it, and that she could not be resuscitated, although efforts were made; it appears that she was drowned.   At that time it appears that the gate in the fence in front of the spring was wide open; it also appears that the gate was not very secure, that one of the posts was loose, that the gate could be closed by moving the post, and that it had been in that condition at the time when Mr. Urban first lived in the house, and ever since up to the day of the accident.   After the accident Mr. Urban nailed up the gate; but he never made any complaint to the landlord or its agent, at any time before the accident; nor does it appear that any complaint was made in relation to the spring or gateway, after the accident, to the landlord or its agent, until some weeks later when it appears that complaint was made that the water from the spring was leaking into the cellar.

Furthermore, it nowhere appears that the landlord at or before the letting of the tenement, or at any time, made any agreement to make any repairs, improvements or changes, either to the house or to its surroundings; it nowhere clearly appears that at any time was the barrel covered or that any provision was made by anyone for keeping it covered; it appears to have been open at the time of the letting, for the witness Hawrilak, who went to the house with Urban on the day when he hired the lower tenement says: "He was with me but he was upstairs and I was standing in the yard and *looking at the water.*"   The time referred to was upwards of two years before the accident; at and from that time the evidence shows that Urban was fully charged with knowledge of the existence and condition of the spring, of the gate in the fence and all the surroundings.

It nowhere appears that the landlord retained any control or use of the yard or of the spring or did any act showing any such retention, control or use. On the contrary so far as there is any evidence, it shows that John Urban, being the sole tenant in possession of the only tenement rented upon these premises at and for a long time prior to the accident, had the sole use and control of the yard and of all things therein including the spring and its inclosure and was entitled to make such use thereof for all necessary and convenient domestic purposes, as he saw fit, for himself and his family and for all such persons as he saw fit to invite upon the premises and into his house as boarders.

There was no privity of contract between the defendant and the plaintiff or any member of his family and there is no evidence that the defendant knew of the presence of the defendant or his family upon the premises and no evidence to support the allegation of the declaration that the plaintiff's daughter Helena Gorski "was in and upon said premises, with the knowledge and consent, and at the invitation, of the said defendant."

The general principle governing the relation of landlord and tenant with regard to the liability of the landlord for injuries resulting from lack of repair or dangerous condition of premises let was stated by this court in *Whitehead* v. *Comstock Co.*, 25 R. I. 423, at page 425, as follows: "We think it is clear that the demurrer should be sustained. It is well-settled law that there is no implied warranty on the part of a landlord that the premises let by him are suitable for the purpose for which they were hired. 'The maxim *caveat emptor* applies, and the lessee takes the risk of condition, unless he protects himself by express covenant. In other words, the tenant takes the premises 'for better or for worse,' and cannot complain that they were not constructed differently.'" MacAdam on Land & Ten. 3rd ed. p. 1245. *Railton* v. *Taylor*, 20 R. I. 279, is to the same effect. See also *Dutton* v. *Gerrish*, 9 Cush. 89; *Royce* v.

*Guggenheim,* 106 Mass. 201; *Woods* v. *Cotton Co.,* 134 Mass. 357; Taylor on Land & Ten. 8th ed. §§ 327–8.

"In short, the law undoubtedly is, as held by the court in the well-reasoned case of *Purcell* v. *English,* 86 Ind. 34, that no duty to repair on the part of the landlord arises out of the relation of landlord and tenant; but on the contrary this relation devolves that duty upon the tenant, and it is only where the landlord contracts to keep the premises in repair that he is burdened with that duty. And, as said by the court in that case: 'The logical conclusion from this principle (and a more firmly settled one there is not in all the books) is, that a landlord, not under contract to repair, is not, as a general rule, responsible to the tenant for injuries caused by a defective condition of the demised premises.' See also *Humphrey* v. *Wait,* 22 Up. Can. Com. Pleas, 580.

"In cases where there is fraud or concealment on the part of the landlord regarding the safe condition of the premises let, a different rule would apply; as, for instance, where there are hidden traps or pitfalls which are known to the landlord, but unknown to the tenant (see *Capen* v. *Hall,* 21 R. I. 364), and the latter is injured thereby, without any fault on his part. But in the absence of any agreement to repair the demised premises on the part of the landlord, and in the absence of any fraud or concealment on his part as to their safe condition, and the defects in the premises are not secret, but obvious, the authorities seem to be unanimous that the tenant takes the risk of their safe occupancy. *Harpel* v. *Fall,* 65 N. W. Rep. (Minn.) 913; Wood's Land & Ten. § 382; *Carstairs* v. *Taylor,* L. R. 6 Ex. 217; *Davidson* v. *Fischer,* 11 Colo. 583; *Moynihan* v. *Allyn,* 162 Mass. 270; *Jaffe* v. *Harteau,* 56 N. Y. 398; Thompson on Neg. Vol. 1, § 1131, and cases in note."

See also *Davis* v. *Smith,* 26 R. I. 129, 136. See also as to non-liability of landlord for obvious defects and for latent defects not actually known to him, the following additional authorities: *Quinn* v. *Perham,* 151 Mass. 162; *O'Malley* v. *Twenty-Five Associates,* 178 Mass. 555–558; *Freeman* v.

*Hunnewell,* 163 Mass. 210; *Bowe* v. *Hunking,* 135 Mass. 380, 383;; *Purcell* v. *English,* 86 Ind. 34; 1 Tiffany, Land & Ten., 634 d.; *Dobson* v. *Horsley,* 1 K. B. (1915) 634.

In this case there is no evidence of any fraud or concealment on the part of the landlord; on the contrary all the evidence shows that the spring and its condition and surroundings were at and before the time of the letting the same as they always remained thereafter and were well known to the tenant all the time; and were also perfectly obvious to the plaintiff from the time when he and his wife came there to board. If the latter did not see them as they claim in their testimony it was due to their own lack of observation and not to any fraud or concealment on the part of the landlord.

(3) The sub-tenant has no greater right of recovery in such case than has the tenant himself; the principle is well stated in *Towne* v. *Thompson,* 68 N. H. 317, 319; "The possession of leased premises is in the tenant. Persons who occupy by his permission, as his sub-tenant, servants, employees, or members of his family, do not occupy by permission of the landlord, and their rights in regard to injuries received from defects in the premises are governed by the same rules and are subject to the same limitations as the tenant's. *Bowe* v. *Hunking,* 135 Mass. 380, 383; *Jaffe* v. *Harteau,* 56 N. Y. 398; 1 Tay. L. & T. s. 175 a."

See also, same general principle recognized in *Cole* v. *McKey,* 66 Wis. 500, 506; 1 Tiffany, Land. & Ten. § 96 a. (p. 650); and applied in *Henson* v. *Beckwith,* 20 R. I. 165, 168 (& cas. cit.).

We find in accordance with the fundamental principles above set forth, as recognized and applied in our own cases, and supported by authority generally, that the plaintiff made out no case for recovery and that the direction of a verdict for the defendant was proper.

This decision on the fundamental question renders unnecessary the discussion of some incidental matters suggested on defendant's brief.

We find no cases upon plaintiff's brief which controvert the opinion above set forth. Such cases as are cited therein relate to differing states of fact and different principles of decision.

The plaintiff's exceptions are overruled and the case is remitted to the Superior Court sitting in Providence County with direction to enter its judgment for defendant upon the directed verdict.

*Thomas L. Carty,* for plaintiff.

*Gardner, Pirce & Thornley,* for defendant. *Charles R. Haslam, Benjamin M. McLyman,* of counsel.