MARK LEONICK *vs.* MANVILLE JENCKES CORPORATION.
MARY LEONICK *vs.* SAME.

MARCH 17, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   These are actions of the case brought by a husband and his wife to recover their respective damages for personal injuries sustained by her and alleged to have been caused by negligence on the part of the defendant corporation.   They were tried together in the superior court before a jury, and the result in each was a verdict directed for the defendant.   Each case is now before us on a bill of exceptions by the plaintiff, which sets forth only an exception to the direction of such verdict.   As our decision must be the same in both cases, we shall discuss only the wife's case.

She received her injuries by slipping on the top step of a short flight of steps, leading from the rear door of a house in which she and her family were living and of which she had been, for about ten years, the tenant from month to month under the defendant.   She slipped and fell as she was starting down the steps with a can of garbage during very rainy weather; and the evidence showed that her slipping was the result of the slippery condition of the step, caused by rain-water and wet and slippery decayed wood

which had fallen from an eaves trough or gutter that was badly and obviously out of repair.

The decisive question in the case is whether the defendant, as landlord, was under a duty to the plaintiff to keep the gutter in repair, there being no written lease and no proof of any agreement by the defendant to keep any part of the house in repair. The defendant's attorneys contend, in substance, that the same rule applies in this case as applies in a case of a letting of an entire building and that under the law of this state a landlord, who has let an entire building to a tenant and has not, in the contract of letting, expressly assumed any duty to make repairs, is not under any duty to keep any part of the building in repair and is not liable to the tenant for any injury or damage caused by any supervening dangerous condition of the premises, resulting from want of repair.

This, in our opinion, is the well-settled rule at common law and has been recognized as in force in this state. It is stated as follows in 1 Tiffany on Landlord and Tenant, 574, § 87, and is supported by a large number of cases cited: "As the landlord is under no obligation to the lessee, as regards the condition of the premises, or its fitness for the lessee's purpose, at the time of the demise, so he is under no obligation to the lessee, or to the latter's assignee, to keep the premises during the tenancy in a condition satisfactory to the latter. Accordingly, a landlord is not bound, as a general rule, in the absence of special stipulation, to make repairs or improvements on the premises in order to render them safe or fit them for the tenant's use. And as a result of this principle, the tenant cannot assert any claim against the landlord on account of injury to himself or his property owing to defects in the premises arising since the demise."

The conclusion is stated thus in 16 R. C. L. 1034: "The logical conclusion from the principle that the landlord is under no implied obligation to repair is that a landlord not under contract to repair is not responsible to the tenant for

injuries to person or property caused by defects in the rented premises."

This rule was recognized and applied in *Whitehead* v. *Comstock & Co.,* 25 R. I. 423, 56 A. 446. At page 426 (447) the court said: "In short, the law undoubtedly is, as held by the court in the well-reasoned case of *Purcell* v. *English,* 86 Ind. 34, that no duty to repair on the part of the landlord arises out of the relation of landlord and tenant; but on the contrary this relation devolves that duty upon the tenant, and it is only where the landlord contracts to keep the premises in repair that he is burdened with that duty." This language and considerably more, in harmony with it, from the same opinion was quoted with approval in *Gorski* v. *Consolidated Rendering Co.,* 41 R. I. 339, 103 A. 907.

This rule has been recognized and applied in other cases in this court and we have found no decision by this court that is inconsistent with it. See *Henson* v. *Beckwith,* 20 R. I. 165, 37 A. 702. It was stated in *Shute* v. *Bills,* 191 Mass. 433, 78 N. E. 96, that the rule applied as to repairs to the roof of premises let and to the gutters, in the absence of proof of a prevailing local usage to the contrary. We see no reason why the general rule should not be so applied, unless the control of the roof or gutters is reserved by the landlord.

The plaintiff's attorney in the instant case does not seem to deny that the general rule and the particular applications are as stated *supra,* but he contends that the general rule does not apply in this case, because the house in question is a double house, of which the other half is a separate tenement. He contends that a supplemental rule applies, namely, that when an owner of a building lets out portions of it to different tenants and retains control of stairways and other passageways and other portions of the building, which are for the common use of all the tenants, he is then bound to keep in a reasonably safe condition, for such use, the portions of the building of which he has thus retained

control. Such supplemental rule is well recognized. 1 Tiffany on Landlord and Tenant, 622, § 88.

In the instant case, however, there were no such portions of the entire building, which were not let exclusively to any tenant but of which the landlord retained control, for the common use or benefit of all tenants. The two tenements were evidently on the same level and were completely separated by a vertical partition. The evidence clearly proved that they had separate back doors and that their back steps were separated by what the plaintiff in her testimony described as a "little wall."

The plaintiff's attorney relies mainly on his contention that there was a common roof over the two tenements and that the wooden gutter at the rear of the building ran clear across, under the eaves. But, although there was no visible separation of the roof into two parts, yet one half of it was solely over one tenement and the other half was solely over the other tenement. The same thing was true of this gutter; and the fact that the half of it which was back of one of the tenements was out of repair would not endanger the safety of any occupants of the other tenement, who could protect themselves from injury or damage from water or decayed wood, coming down from the gutter, by keeping in repair that part of the gutter which was over their part of the premises.

A similar situation was involved in *Kearines* v. *Cullen,* 183 Mass. 298, 67 N. E. 243. In that case the plaintiff was a member of the family of the tenant, under the defendant, of one half of a double house, the whole of which belonged to the defendant. The two tenements in the house were separated by a vertical partition. There were separate front doors, which were quite close together, one on each side of the partition. A plank step ran clear across in front of both doors, and the plaintiff was injured, in going out through the front door of her home, because the part of the

step which was in front of that door gave way from being out of repair.

The court held that the defendant was entitled to have a verdict directed in his favor, saying that there was no testimony "that there was any occasion or necessity for persons passing from the highway to either tenement, or for the tenants themselves in the use and occupation of their respective houses, to use any portion of the plank except so much as formed a step in front of each tenement." The court found that the evidence did not "raise any implied agreement that the step was not a part of the premises let."

In support of his contention that the roof and gutter in the instant case were under the control and management of the defendant, the plaintiff's attorney relies on the fact that about six months before she was injured the defendant had repaired the roof; and he argues that the gutter was an integral part of the roof. But the facts were that the gutters were suspended from the eaves by hooks and that when the defendant repaired the roof, it did not repair the gutters. The evidence for the plaintiff also proved that the other tenement was not occupied and that the roof was repaired by the defendant at the request of the plaintiff.

It seems to be well settled at common law that in case of a single house the fact that repairs are so made by a landlord to the roof or any other exterior part of the house is not evidence that he has reserved to himself the control of such roof or other part of the house. In *Shute* v. *Bills, supra,* it was held that evidence of a local usage that the landlord in such a case retains control of the outside of the house, including the roof and gutters, is inadmissible in evidence, because such a usage would be a bad one, contradicting "both the agreement of the parties and the rule of the law."

In that case there was evidence that the defendant, who was the landlord, had repaired the roof and gutters of the demised premises. Yet the court, at page 438, (78 N. E. 98),

says: "There was no evidence that the defendant retained control of the roof and gutters."

So also in *McLean* v. *Fiske Wharf & Warehouse Co.,* 158 Mass. 472, 33 N. E. 499, the court says, at page 474 (500): "It is well settled that, in the absence of an express contract, a landlord is under no obligation to make repairs on real estate in the possession of a tenant, and the fact that at special request he makes some repairs while his tenant is holding at will is no evidence that he contracted in the beginning to keep the premises in good condition. He may, and often does, voluntarily make particular repairs for the preservation of the estate and the benefit of the reversion, as well as to induce the tenant to continue a tenancy which otherwise he might terminate at short notice." See also *McKeon* v. *Cutter,* 156 Mass. 296, 31 N. E. 389.

We are of the opinion that the established common-law rules which apply to tenancies of entire houses are in accordance with the Massachusetts cases which we have cited; and that, for the reasons which we have above stated, the same rules apply to the instant case. It follows that in our judgment there was no evidence in the instant case that the defendant reserved to itself the control of the gutters. We are of the opinion, therefore, that the general rule hereinbefore stated as applying where an entire building is let, and not the supplemental rule, which applies where the control of portions of a building is reserved by the landlord, applies to the gutters in the instant case, and that the defendant was under no duty to keep them in repair and was not liable for any injuries to the plaintiff which resulted from their being out of repair.

On her own uncontradicted testimony, the plaintiff's injuries were caused by the fact that that portion of the gutter which was over the top step of the flight of steps leading down from her back door was out of repair; and, as we have already stated, those steps were separated by a "little wall" from the corresponding steps leading down from the back

door of the other tenement. On the record in this case we agree with the conclusion of the trial justice, that there was no evidence of negligence on the part of the defendant; and it follows that he committed no error in directing the verdict for the defendant.

In each case the plaintiff's exception is overruled and each case is remitted to the superior court for entry of judgment on the verdict as directed.

*Fergus J. McOsker,* for plaintiff.

*Frederick W. O'Connell, Dana M. Swan, Swan, Keeney & Smith,* for defendant.