IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

JACKSON, APRIL TERM, 1916.

MERCHANTS' COTTON PRESS & STORAGE CO. v. ANDREW
MILLER.*

(*Jackson.* April Term, 1916.)

LANDLORD AND TENANT. Premises. Injuries from defects. Em-
ployee of tenant.

Where the landlord has agreed to keep the premises in repair,
and after notice neglects to do so, he will be liable to an em-
ployee of the tenant who is injured by the defect.

Cases cited and approved: Thompson v. Clements, 96 Me., 196;
Davis v. Smith, 26 R. I., 129; Cavalier v. Pope (1905), 2 K. B.,
757; Cameron v. Young, 12 Ann. Cas., 49; Brady v. Klien, 133
Mich., 422; Dustin v. Curtis, 74 N. H., 266; Shute v. Bills, 191
Mass., 433; Edwards v. N. Y., etc., R. Co., 98 N. Y., 245; Still-
well v. South Louisville Land Co. (Ky.), 58 S. W., 696; Thomas
v. Vannuci, 185 Ill. App., 414; Patten v. Bartlett, 111 Me., 409;
Flood v. Pabst Brewing Co., 158 Wis., 626; Stenburg v. Will-
cox, 96 Tenn., 163; Miles v. Janvrin, 196 Mass., 431; Hutchinson
v. Cummings, 156 Mass., 329; Glynn v. Lyceum Theatre Co., 87
Conn., 237; Monahan v. Nat. Realty Co., 4 Ga. App., 680; White
v. Sprague, 9 N. Y. St. Rep., 220; Baird v. Shipman, 33 Ill. App.,
503.

*As to liability of landlord for injury to tenant's guests or
employees for defects in premises see notes on different phases of
the subject in 34 L. R. A., 699, 17 L. R. A. (N. S.), 1161.

Cotton Press & Storage Co. v. Miller.

Cases sited and distinguished: Ryall v. Kidwell (1913), 3 K. B., 123; Campbell v. Portland Sugar Co., 62 Me., 552.

FROM SHELBY

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—A. B. PITTMAN, Chancellor.

L. B. PHILLIPS, for plaintiff.

S. P. WALKER, for defendant, Merchants' Cotton Press & Storage Co.

CARUTHERS EWING and EARL KING, for defendant, Memphis Compress Co.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The case is before this court on the grant of a petition for *certiorari* filed by the Merchants' Cotton Press & Storage Company to have reviewed a judgment of the court of civil appeals adverse to it.

The suit was instituted by Miller to recover damages against the Memphis Compress Company (hereinafter called the lessee company) in whose employ Miller was at the time he suffered the personal injury, which is the cause of action. The petitioner company, the owner of the compress plant, was also made a defendant, and for convenience it will be referred to as the lessor company, it having leased the premises to the operating company, the employer of Miller.

Cotton Press & Storage Co. v. Miller.

In the declaration it was averred that plaintiff was employed in the compress, and that there had been furnished to him an unsafe place in which to work; that a door of the compress building and its attachments and fastenings were old, worn, defective, and unsafe; that this was true at the time the premises were demised by the lessor company to the lessee company, of which facts the lessor had knowledge, but that it negligently failed to properly repair same, etc.

The trial judge sustained a motion for peremptory instructions interposed by the lessor company, and the court of civil appeals reversed the judgment.

The injury occurred November 12, 1913, to Miller while working as a storage laborer in and about the compress. He had been so employed for only three days when he was injured, and was unacquainted with the confessedly defective condition of the door in question. This door weighed from eight hundred to one thousand pounds, being metal lined for fire protection purposes. It was constructed to be operated by raising after the manner of the ordinary window; weights having been suspended to facilitate its being raised and lowered. The compress building was erected in 1887, and the ropes to which the weights had been attached had worn and broken and the weights had become detached, so that, in order to keep the door up and open, a prop or stick was used as a support. By long use the strips that held either side of the door in place in grooves had worn away and become

thin. On the day of the accident, at the close of the work hours, in the darkness, Miller and two other laborers went to lower the door. One of these two knocked the prop out before Miller reached a point where he or the third laborer could take hold and ease the door's descent. Its great weight required two or three men to lower it in safety. The door fell suddenly to the floor, and its bound carried it out of the insecure grooves; it fell on Miller, causing painful injuries.

It appeared that the unsafe condition of the door's attachments and fastenings were known to the superintendent of the lessee company in active charge of the plant, and that he had notified its higher officials. Further, as early as September 1-10, 1913, notice thereof had been given to the lessor company with an accompanying request to repair, that company being under contract obligation to the lessee to make repairs. Nothing was done by the lessor company in pursuance of the notice or of the knowledge received by one of its officials about that date while he was at the plant.

There is a sharp and pronounced conflict among the authorities as to the liability of a landlord, who has obligated himself by a contract with his tenant to make repairs, or to keep the premises in repair, to a third person who may be lawfully on the premises and is there injured by reason of the landlord's failure to perform the agreement. Probably the weight of authority is in favor of the rule of nonliability in

such circumstances, the reasoning in most of 'the decisions to that effect proceeding on the idea that there is wanting privity of contract between the landlord and the injured person, which privity is deemed to be an essential element of liability.

We say most of the cases, for the reason that some of the decisions of the courts of this country, which reach the result indicated, go further and deny even to the tenant the right to recover for personal injuries that may be consequent on the breach of the landlord's contract to repair the demised premises. Such damages are by them held not to be in the contemplation of the parties, and to be too remote, to be recoverable by the tenant in an action *ex contractu,* and that "to permit of a recovery for such damages based on a contract simply because it is in form an action of tort would be making a distinction that could not be justified by reason or authority." *Thompson* v. *Clements,* 96 Me., 196, 60 L. R. A., 580; *Davis* v. *Smith,* 26, R. I., 129, 58 Atl., 630, 66 L. R. A., 478, 106 Am. St. Rep., 691, 3 Ann. Cas., 832, and cases cited in the opinion and the note. More may be said of the logical exactness of this doctrine than of its inherent justice.

The English rule, reannounced by the court of appeals and the House of Lords in *Cavalier* v. *Pope* (1905) 2 K. B., 757; Id. [1907] A. C., 428, 5 Ann. Cas., 713, makes the test of the lessor's liability privity of contract. In that case a tenant was allowed by the court of appeals to recover of his landlord for his own injuries, caused by a defective floor which the

owner had engaged to repair; but that court and the House of Lords were in accord in holding that the wife of the tenant, who was injured at the same time, was not entitled to a judgment; and this, on the ground that "there was but one contract, and that was made with the husband. The wife cannot sue upon it," and there is no other form in which an action could be maintained. The later case of *Ryall* v. *Kidwell* (1913), 3 K. B., 123, Ann. Cas., 1915B, 163, follows the above case, in denying a recovery for injuries suffered by a daughter of the tenant and undertakes to refute the contention urged by counsel to the effect that if—

"there might be no remedy on the contract there was a remedy in tort. . . . A person who is not the tenant has no right of action either in contract or in tort"

It is probably true as claimed, that the greater number of the courts of this country that have so far ruled on the point give adherence to the English rule. See cases cited in 24 Cyc., 1119, 1120, and in annotations of *Ryall* v. *Kidwell*, Ann. Cas., 835, and *Cameron* v. *Young*, 12 Ann. Cas., 49; also *Brady* v. *Klien*, 133 Mich., 422, 95 N. W., 557, 62 L. R. A., 909, 103 Am. St. Rep., 455, 2 Ann. Cas., 464, and note; *Dustin* v. *Curtis*, 74 N. H., 266, 67 Atl., 220, 11 L. R. A. (N. S.), 504, 13 Ann. Cas., 169.

But the fact that several of these courts broadly adhering to the doctrine have created legal fictions, seemingly new to the law, in order to modify the un-

Cotton Press & Storage Co. v. Miller.

just workings of the rule when projected along logical
lines to the ultimate, argues against the soundness of
the doctrine itself.   Thus, in efforts to escape from
manifestly unjust results of such application, it has
been held that members of the lessee's family are to
be regarded as tenants, and that the landlord owes
to them the same duty to keep the premises in a safe
condition, in such circumstances, that he owes to the
lessee, the only party to the contract, and, it would
seem, in privity.   *Shute* v. *Bills*, 191 Mass., 433, 78
N. E., 96, 7 L. R. A. (N. S.), 965, 114 Am. St. Rep.,
631, and notes cited above. ·

Under the broad rule, by which the test of liability
is a relation of privity with the lessor, it is not easy
to see how there could be any such liability if the
agreement to repair is made with a corporate lessee.
Such a lessee cannot be injured in person by a failure
to keep the promise on the part of the lessor.   The
rule must exclude liability even to its chief or sole
managing officer.   Would it operate to deny a recovery
to one who held all the capital stock of such a lessee?
Would all the members of a copartnership not be pro-
tected as being in contractual privity, especially in
those jurisdictions where the rule is that a firm is
not an entity distinct from its members?   What of
substantial justice can there be in denying a remedy
in the one case supposed, and affording one in the
other?

135 Tenn.—13

The cases adhering to the English rule, as seen, recognize the right of the tenant to recover. for personal injuries so suffered by him; and, in doing so, it seems to us, they concede the existence of a remedy or measure of relief that cannot be in nature *ex contractu*, in any true sense. The tenant's remedy *ex contractu* would seem to be confined to a recovery of the value of the repairs, on a breach of the agreement by the lessor to make them, as is argued by the Maine court. The notion that a right to sue for personal injuries accrues to the lessee simply because he is a party to the contract is, in essence, but an attempt to graft an action that sounds in tort on a contractual relation. In order to do this, must it not be conceived and conceded that a duty is implied by law to rest upon the lessor, the breach of which is culpable negligence? When this is granted, why deny the implication, and a consequent remedy, in favor of all who fairly may be deemed to be in the contemplation of the contracting parties for protection?

A different theory is enforced by other courts—one that does not need the aid of fictional differentiation in order to the working out of just results. We believe these courts announce the better, and what will develop into the prevailing, doctrine when and as applied to members of the tenant's family or to those in his employ in the use of the premises; in short, to those third persons who form the group of persons who, in the fair contemplation of the contracting par-

ties, are customarily to make that use of the premises for which they are let.

The action of the injured employee, for example, in such cases is not deemed to be on the contract, for the employee is of course a stranger to the lessor's obligation to repair or keep repaired.  The remedy is considered to be one for the wrong committed by the lessor in his negligent failure to perform a duty voluntarily assumed by him which he must be held to know would protect the employee of the tenant, as such user of the demised premises, from injury if his engagement be kept, or expose the servant to injury otherwise.  Instead of the duty being law-imposed, it is self-imposed.  The fact that the duty is voluntarily taken on should not detract from its scope and effect, or lessen the implication which the law will make. Such a duty on nonobservance may constitute the culpable negligence that is the basis for an action sounding in tort.  The implication of legal duty and the *delictum* arise in this way out of the obligation incorporated in the contract, not on the contract.  *Edwards* v. *New York, etc. R. Co.*, 98 N. Y., 245, 50 Am. Rep., 659; *Stillwell* v. *South Louisville Land Co.* (Ky.), 58 S. W., 696, 52 L. R. A., 325; *Thomas* v. *Vannuci*, 185 Ill. App., 414; *Patten* v. *Bartlett*, 111 Me., 409, 89 Atl., 375, 49 L. R. A. (N. S.), 1120; *Flood* v. *Pabst Brewing Co.*, 158 Wis., 626, 635, 149 N. W., 489.  And see *Stenburg* v. *Wilcox*, 96 Tenn., 163, 33 S. W., 917, 34 L. R. A., 615.

There is no undue hardship on the lessor in such case. He has seen fit to interpose his own agreement to repair, and thereby tended, at least, to cause the lessee to hold back and wait for its execution on his part. He has elected to retain for his own, as primarily resting on him, the duty of care in the particular regard, and should not complain if the law leaves the burden where he placed it and holds him not exempt.

"To suffer such an exemption . . . we think would be contrary to public policy and substantial justice, for it would not unfrequently operate to deprive the injured party of all remedy except against an irresponsible tenant through whom a negligent landlord would reap the profits, without bearing the responsibilities, of his proprietorship." *Campbell* v. *Portland Sugar Co.,* 62 Me., 552, 16 Am. Rep., 503.

In the case at bar the lessor's attention was called to the dangerous state of the doors, one of which caused the injuries of plaintiff, Miller.

This fact has, in several cases, we think justly, been made an essential element of liability on the part of the lessor in such case; that is, that such liability arises only after notice to the lessor, who is not in possession of the premises, of the defect that should be repaired, or the presence of facts from which the law would imply knowledge thereof on his part. *Miles* v. *Janvrin,* 196 Mass., 431, 438, 82 N. E., 708; *Hutchinson* v. *Cummings,* 156 Mass., 329, 31 N. E., 127; *Glynn* v. *Lyceum Theater Co.,* 87 Conn., 237, 87 Atl., 796; *Mona-*

*han* v. *National Realty Co.,* 4 Ga. App., 680, 685, 62 S. E., 127.

If the landlord has agreed to keep the premises in repair, and after notice neglects to do so, he will be liable to an employee of the tenant, who is injured by the defect. *White* v. *Sprague,* 9 N. Y. St. Rep., 220.

It has been held that where an agent of the owner of a building who leases it with a heavy door on it in a dangerous condition at the time, promising to put it in a safe condition, there is liability even to a person who goes there to deliver goods to the tenant, and who is injured by the falling of the door. *Baird* v. *Shipman,* 33 Ill. App., 503.

The court of civil appeals, so far as the result reached by it is concerned, committed no error. Writ denied.