**Helen GHORMLEY, Plaintiff–Appellee,**

**v.**

**CARL B. COOK, INC., and Convenient Industries of America, Inc., Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

April 28, 1988.

Permission to Appeal Denied by Supreme Court Aug. 22, 1988.

Joseph B. Yancey, Knoxville, for defendant-appellant Carl Cook.

Craig L. Garrett, Maryville, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

Plaintiff was awarded compensatory damages by a jury in the amount of $125,-000.00 jointly and severally against defendants lessor and lessee for injuries sustained when plaintiff fell near gasoline pumps maintained in conjunction with a convenience market operated by defendant-lessee. Additionally, plaintiff was awarded $15,000.00 punitive damages against the lessee and $7,500.00 punitive damages against the lessor. Lessor has appealed.

In 1969 H & P Development Corporation leased certain premises in Maryville, Tennessee, located in the Southhaven Plaza Shopping Center on Highway 411, to the Defendant, Convenient Industries of America, Inc., (lessee). The lease was for a period of 180 months with two additional five-year renewal periods and, as pertinent here, was for a space 50 by 60 feet deep. Paragraph 9 of the lease also provided: "The leased premises shall not be used for the sale or storage of volatile or inflammable fluids except that the sale of gasoline from underground tanks shall be permitted providing said tanks or pumps and the maintenance and use thereof are installed and operated in a manner approved by the Fire Inspection Bureau."

In June, 1980, lessee notified the lessor pursuant to Paragraph 9 of the lease, it was going to install self-service gasoline facilities on the premises. In the interim the defendant-appellant, Carl Cook, Inc., (lessor) had become the owner of the premises. It appears that, without objection from Cook, lessee proceeded with the installation of the facilities without supervision or control by lessor but a representative of lessor, who did not testify, apparently examined the location and was familiar with the installation.

The facility was constructed along the easterly side of the building in which lessee operated a convenience food mart. Prior to construction the area was covered with asphalt paving. The paving was removed by lessee and three large gasoline tanks were buried adjacent to the building. After the tanks were covered a concrete slab approximately 25 by 25 feet was poured over the tanks. A concrete island about 4 feet wide and 24 feet long was then poured in the center of the slab and gasoline pumps were installed on each end of the island.

The land upon which the convenience store was located was lower than other property in the shopping center and a drainage ditch or swale had been constructed along the front of the store and continued along the east side to carry surface water away from the building. In the construction of the gasoline facilities this drainage swale had been filled in and the concrete slab poured over it. It was then discovered that without the swale to carry off the surface water the store was threatened with flooding. To correct this situation lessee reconstructed the swale along the edge of the concrete slab, which resulted in its being under cars which parked at one end of the island to pump gas from the pump on that end of the island. After the concrete slab was poured and the swale dug out along the side of it, lessee resurfaced the swale and the rest of the area

around the concrete slab with asphalt. However, it intentionally left the concrete slab protruding approximately ½ to ⅝ of an inch above the asphalt.[1]

In October, 1984, the plaintiff-appellee drove her automobile into the service facility to purchase gasoline. She stopped her car where the front wheels were across the swale and the rear of her car was even with the gas pump. When she got out of her car she was standing in the swale. As she turned to close her car door she hung her heel on the slab of concrete protruding above the blacktop, and fell. As a result of the fall her hip was broken.

Numerous issues have been raised on appeal by the lessor, including whether the lessor had any duty to maintain that portion of the premises where the fall occurred; whether the plaintiff failed to exercise ordinary care for her own safety; whether there was any evidence of lessor's negligence and gross negligence.

We note at the outset that the credibility of the lessor's witness, Mr. Cook, was sharply in dispute and Cook's agent who had serviced the lease and presumably was the most knowledgeable as to the conditions from lessor's standpoint did not testify.

Under the terms of the lease, lessor was obligated to "maintain the ... parking area" and covenanted as to the "parking area" to "make all repairs or replacement when reasonably necessary and repair all damages...." Over a period of time the parking area around the convenience market developed potholes and other conditions requiring repairs. In the fall of 1983, lessee began seeking to have the lessor make repairs in accordance with the terms of the lease and, in a letter to lessor from the tenant dated January 11, 1984, it was stated:

> We have recently received notice from our Tennessee regional staff that the parking lot at the above location is in need of repairs. It is our understanding that there are numerous pot holes and

that *the area around the gas pumps in particular is in need of repairs.* [Emphasis supplied.]

A follow-up letter was written on March 5 enclosing a copy of the January letter and there is evidence the lessor did repair some potholes in the parking lot but repairs were not made to lessee's satisfaction and it continued to insist throughout the summer and fall of 1984 that lessor repair the area around the gas pumps by paving the area adjacent to the concrete pad.

On September 11, 1984, lessee wrote lessor that if the work was not done by the end of the month that the lessee, under the provisions of the lease, would do the work and withhold the cost of repairs from the rent. In response, lessor's counsel forbade lessee to undertake any of the proposed paving and repairs.

Lessor argues since the configuration of the swale and concrete pad was intentionally left in the state which resulted in plaintiff's injuries the lessor was without responsibility. The law, however, does not distinguish between whether a defect causing injury is structural or results from wear or ordinary deterioration. *Wheeler v. City of Maryville,* 29 Tenn.App. 318, 203 S.W.2d 924 (1947). The evidence establishes lessee was aware of the hazard created by the condition due to other customers stumbling and complaining about that portion of the parking area and, in response to the complaints, called upon lessor to repair and repave the area.

Viewing the evidence in the most favorable light to the plaintiff, from the testimony and photographs the area where the pumps are located is a part of a parking area contemplated in the original lease, and there was not subsequent agreement to relieve the lessor of the requirement to maintain the area covered with asphalt and utilized for parking in the original lease. Accordingly, there is material evidence from which the trier of fact could determine that the situs of plaintiff's injury was

---

1. Testimony established if the area was subsequently resurfaced the asphalt would be flush with the concrete and not overlapped.

a part of the area to be maintained and repaired by the lessor under the lease.

It is settled law in this jurisdiction that where a landlord has agreed to keep premises in repair and, after notice, neglects to repair, he is liable for one injured by the defective condition. *Cotton Press & Storage Co. v. Miller,* 135 Tenn. 187 (1916). Subsequent cases have established that where the landlord fails to repair, his conduct toward injured third parties is tortious. *See Helton v. Reynolds,* 640 S.W.2d 5 (Tenn.App.1982).

There is evidence from which the triers of fact could reasonably determine the landlord failed to make repairs upon notice, failed to reasonably inspect the premises after a dispute arose, and for a period of several months made numerous attempts to thwart any repairs being made by the tenant and finally forbade the tenant to make any repairs or resurface the area until litigation resolved the dispute between the landlord and tenant, which could evidence a callous disregard for the safety of others.

We conclude there is ample evidence to sustain the judgment entered on the jury's verdict and we affirm.

The remaining issues have been considered and are without merit and we remand with cost of appeal assessed to appellant.

ANDERSON, J., concurs.

SANDERS, P.J.(E.S.), dissents.