IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2005 Session

## EARL A. CROW, III v. DANIEL R. LeDOUX, ET AL.

**Appeal from the Circuit Court for Anderson County**
**No. A2LA0495     James B. Scott, Jr., Judge**

---

### No. E2004-01640-COA-R3-CV - FILED MAY 17, 2005

---

Earl A. Crow, III, brought this action against his landlords, Daniel R. LeDoux and wife, Katherine Marie LeDoux (collectively "the defendants"), for injuries sustained by him in a fall caused by an allegedly defective heating grill in his apartment. The defendants filed a motion for summary judgment, arguing, *inter alia*, that the plaintiff's knowledge of the condition of the grill was at least co-extensive with that of the defendants, and that, as a consequence of this fact, no liability attached. The trial court agreed and granted the defendants' motion. The plaintiff appeals. We vacate the trial court's grant of summary judgment and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and PATRICIA J. COTTRELL, JJ., joined.

Harry L. Lillard, Oak Ridge, Tennessee, for the appellant, Earl A. Crow, III.

Kenneth W. Ward, Knoxville, Tennessee, for the appellees, Daniel R. LeDoux and wife, Katherine Marie LeDoux.

### OPINION

I.

On April 1, 1996, the plaintiff leased an apartment unit owned by the defendants for a period of one year. The leased apartment was one of two identical units located in a single complex, much like a duplex, with the plaintiff occupying the front apartment. The lease agreement contains the following pertinent provision:

> Lessee is to make no changes of any nature in the above named premises without first obtaining written consent from said Lessor or

his heirs, nor to paint any signs on buildings herein leased; and the Lessor or his agent shall have the right to enter said premises at reasonable hours, to examine the same, make such repairs, additions or alterations as may be deemed necessary for the safety, comfort, and preservation of said building.

(Paragraph numbering in original omitted).  The apartment was located in Oak Ridge; however, the defendants resided in Georgia.

On the day before Thanksgiving in 1996, the water heater in the plaintiff's apartment became inoperable.  The plaintiff called the defendants to report the problem.  He spoke with Mrs. LeDoux in her husband's absence.  At Mrs. LeDoux's suggestion, the plaintiff obtained several cost estimates to replace the water heater.  The plaintiff later advised Mrs. LeDoux regarding the estimates, whereupon she told him to contact one of the estimators and have the water heater replaced.  The plaintiff did as Mrs. LeDoux directed.  Once Mr. LeDoux received the bill for the new water heater, he was "extremely angry" about its cost and contacted the plaintiff, telling him "not to ever, ever, ever authorize any repairs on [the defendants'] properties."

On Christmas day, 1996, a small fire broke out in the plaintiff's apartment, which caused damage to a metal heating grill.  The grill was located in the floor of the hallway that separated the bedrooms and bathroom from the main living area of the house; the grill spanned the entire width of the hallway.  Heat was furnished to the entire apartment through the grill.  On December 26,  Mr. LeDoux instructed the plaintiff to take the metal grill out of the back apartment, which was unoccupied, and replace the fire-damaged grill in the plaintiff's apartment.  This, however, was only to be a temporary solution, as Mr. LeDoux told the plaintiff he would arrange to purchase a new grill for the plaintiff's apartment.

When the plaintiff replaced the grill, he noticed that the "new" grill "had a slight depression on one corner."  The plaintiff testified that, over time and with use, the depression began to deepen and change in shape.  The plaintiff informed the defendants of the change in the grill, but Mr. LeDoux responded to the plaintiff by reminding him that the grill was "only temporary" and that it would "be fine for now."

Despite the plaintiff's repeated requests that the grill be replaced, Mr. LeDoux did not do so, instead telling the plaintiff that he would "get around to it" and that he intended to purchase a grill at a wholesale price rather than paying retail.  While the plaintiff considered purchasing a new grill and replacing it himself, he recalled Mr. LeDoux's explicit instructions following the water heater replacement and knew that he could not replace the grill without Mr. LeDoux's authorization.

Because the plaintiff began to fear that the grill was unsafe, due to its continued deterioration, he would often place a chair over the grill in order to keep his family and guests from stepping directly onto the grill.  The plaintiff and others would routinely step or jump over the grill when they were walking down the hallway, in order to avoid stepping directly on the grill.

On March 27, 1997 – over three months after the plaintiff replaced the fire-damaged grill with the "temporary" grill from the back apartment – the plaintiff was walking down the hallway of the apartment with an armload of clothes and a small stereo. The plaintiff attempted to step over the grill, but when his foot came down, a small, sharp piece of metal that was sticking up from the grill caught his foot. The metal piece went through the plaintiff's tennis shoe and into his foot, causing the plaintiff to fall and sustain injuries to his shoulder, neck, back, and foot.

The plaintiff originally filed suit against the defendants on March 17, 1998, alleging, *inter alia*, that the defendants were liable to the plaintiff for his injuries due to their failure to replace the defective grill. The plaintiff filed a voluntary nonsuit on February 7, 2002. The suit was re-filed on September 25, 2002. The defendants answered, generally denying all liability. They later filed a motion for summary judgment. The trial court conducted a hearing on the motion, and the plaintiff's response, on May 10, 2004. At the hearing, the defendants argued that the plaintiff's knowledge of the condition of the grill was at least co-extensive with, if not superior to, the defendants' knowledge, and that under Tennessee case law, a landlord has no liability for a tenant's injuries under such circumstances. The trial court held as follows:

> Well, the Court could be wrong in this case, but basically speaking, the idea of having a duty to yourself just seems to me to rise to the occasion that a person who is so concerned about this and has knowledge of a condition, that that's what they're talking about in our case law.
>
> Individuals who have that must look out for their own safety and – until a person who has superior knowledge in some way has actually been placed in a position where the other person would assume a greater degree of that responsibility than the person who has that knowledge, it would seem to me that your motion for a summary judgment should be granted, and I so rule.

The trial court entered its order granting the defendants' motion for summary judgment on June 15, 2004. From this order, the plaintiff appeals.

II.

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." **Byrd v. Hall**, 847 S.W.2d 208, 210-11 (Tenn. 1993) (citations omitted).

The party seeking summary judgment has the initial burden of demonstrating that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law. *Id.* at 215. Once the moving party satisfies its burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission of the case to a trier of fact. *Id.* Summary judgment should be granted only "when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995) (citation omitted). In *Evco Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975), the Supreme Court observed as follows:

> Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. [It] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

Since a motion for summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 44-45 (Tenn. Ct. App. 1993). We must decide anew if summary judgment is appropriate.

III.

The plaintiff raises several issues on appeal. Our initial inquiry is directed at determining whether there are facts in the record, or inferences from facts in the record which are favorable to the plaintiff, from which a reasonable person could conclude that the piece of metal that was sticking up from the grill is an outgrowth of the depression in the grill, about which the plaintiff testified and about which the defendants were aware.

A landlord generally will not be held liable to a tenant for any harm arising out of a dangerous condition on the leased premises. *Lethcoe v. Holden*, 31 S.W.3d 254, 256 (Tenn. Ct. App. 2000) (citations omitted). However, this rule is subject to several exceptions. While a landlord typically has no duty to make repairs on the leased premises, *Evco*, 528 S.W.2d at 23, it must do so if the lease so requires, *Taylor v. Gunn*, 227 S.W.2d 52, 55 (Tenn. 1950). If the landlord is required to make repairs under the terms of the lease agreement and if, after receiving notice, the landlord neglects to make repairs, "he is liable for one injured by the defective condition." *Ghormley v. Carl B. Cook, Inc.*, 756 S.W.2d 264, 267 (Tenn. Ct. App. 1988) (citing *Cotton Press & Storage Co. v. Miller*, 135 Tenn. 187 (1916)).

In the instant case, the lease clearly provides that the defendants are responsible for repairs to the premises. Moreover, when the plaintiff replaced the inoperable water heater in his apartment with the permission of Mrs. LeDoux, Mr. LeDoux informed him, in no uncertain terms, that he was *never again* to make any other repairs to the apartment without his express authorization. Based

-4-

upon the lease provision, as bolstered by the directive from Mr. LeDoux, the plaintiff was in no position to repair or replace the defective grill. Furthermore, the plaintiff's deposition testimony and affidavit clearly establish that the defendants had notice of the damaged grill for over three months before the plaintiff was injured and yet they never made any attempt to repair or replace the grill.

In the plaintiff's deposition, he testified that the grill taken from the back apartment as a replacement for the fire-damaged grill had "a slight depression on one corner of it" at the time he installed it. As reflected in the plaintiff's affidavit, Mr. LeDoux was aware of this damage, as he told the plaintiff that the grill had been damaged when he "dropped a piano on it" while moving his mother-in-law out of the back apartment. The plaintiff noticed that the grill "continued to change . . . its shape, from the time that [he] got it," until it became a "major depression." In his affidavit, the plaintiff states that, as he "attempted to step over the grill" on March 27, 1997, the grill had "*finally* broken and a sharp piece stuck up, catching [his] left foot and piercing it, caus[ing him] to fall and suffer injuries." (Emphasis added). The plaintiff testified that the first time he saw the grate with the sharp piece of metal sticking up "was hours *after* [he] fell." (Emphasis added). In his deposition, the plaintiff referred to photographs of the damaged grill that were taken after he was injured; while these photographs were made exhibits to the deposition, they are not included in the record on appeal. However, while referencing these photographs, the following exchange took place between the defendants' attorney and the plaintiff:

> Q. Now, when you moved [the grill] over [from the back apartment], I presume in December of 1996, you said it had a slight depression?
>
> A. Correct.
>
> Q. Was that depression located in this corner [of the photograph] (indicating) that the damage is shown on the pictures that you've given me?
>
> A. Roughly there.

Construing this testimony in the light most favorable to the plaintiff, as we are required to do, we hold that there is sufficient evidence in the record from which a reasonable person could conclude that the plaintiff's injuries arose out of the original damaged condition of the grill. The testimony reflects that the grill continued to deteriorate after its installation, with what was once a "slight depression" becoming a "major depression." The plaintiff did not notice that the grill had "*finally* broken" until hours after he fell. (Emphasis added). Moreover, the plaintiff's deposition testimony reflects that the sharp piece of broken metal was in the same area as the original indented area of the grill. When all of the material before us is viewed in a light most favorable to the plaintiff, we conclude that a jury of reasonable individuals, when presented with these facts, could conclude that the defective grill condition, about which the defendants were very much aware and for the repair or replacement of which they were responsible, had morphed, over time, into the sharp

piece of metal that caused the plaintiff to fall and injure himself. Such a jury could further conclude, from the evidence now before us, that the plaintiff was not aware of this new danger and that the defendants breached their duty to correct the defective grill – a breach which resulted in the condition that caused the plaintiff's fall. In view of this, we cannot conclude that the defendants' "co-extensive knowledge" argument warrants a grant of summary judgment. As the record now stands, there are genuine issues for trial by a fact finder. Summary judgment is not appropriate in this case.

We pretermit other issues raised by the plaintiff.

IV.

The judgment of the trial court is vacated and this matter is remanded to the trial court for further proceedings. Costs on appeal are taxed to the appellees, Daniel R. LeDoux and wife, Katherine Marie LeDoux.

_____
CHARLES D. SUSANO, JR., JUDGE