# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 1, 2021

## KELLY R. RUSSELL v. CHATTANOOGA PROPERTY MANAGEMENT, LLC

**Appeal from the Circuit Court for Hamilton County**
**No. 19C524      John B. Bennett, Judge**

---

### No. E2020-01661-COA-R3-CV

---

This appeal involves a United Postal Service ("UPS") worker who was injured when her foot went through the porch of a residence at which she was delivering a package. The UPS worker sued the property management company who leased the property, alleging it was liable for her injuries. The trial court dismissed the case on summary judgment, finding the property management company had no duty to the UPS worker. Because the record on appeal does not contain the lease agreement the trial court relied upon in granting the property management company's motion for summary judgment, we vacate the trial court's order and remand the case to the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

Carl Mark Warren, Chattanooga, Tennessee, for the appellant, Kelly R. Russell.

Alaric A. Henry and Alan Clark Blount, Chattanooga, Tennessee, for the appellee, Chattanooga Property Management, LLC.

FACTUAL AND PROCEDURAL HISTORY

On May 29, 2015, Barry Jackson entered into a management agreement with Chattanooga Property Management, LLC ("Chattanooga Property"), for Chattanooga Property to provide management services for his home located at 6578 Hickory Trace Circle in Chattanooga, Tennessee ("Hickory Trace property"). In April 2016, Chattanooga Property entered into a lease agreement with Donna Carson, for Ms. Carson to rent the Hickory Trace property.[2]

On April 10, 2018, Kelly R. Russell, a United Postal Service ("UPS") delivery driver, was delivering a package to the Hickory Trace property, when her foot went through the tile-covered front porch of the home, causing injuries to her knee, ankle, and shoulder. Ms. Russell filed suit against Chattanooga Property on April 19, 2019, alleging that Chattanooga Property "had actual and/or constructive notice of the defective porch but failed to correct the defect."[3]

On January 8, 2020, Chattanooga Property filed a motion for summary judgment arguing that it did not owe a duty to Ms. Russell. Attached as exhibits to its motion were: 1) an Affidavit of Melanie Butler, Chattanooga Property's property manager/broker; 2) the management agreement Chattanooga Property and Mr. Jackson executed; and 3) an Inspection Detail Report dated July 14, 2017, describing the condition of the "porches / decks / patios" as "good." Ms. Russell filed a response to Chattanooga Property's motion for summary judgment arguing that Chattanooga Property was an "operator" of the premises, that it had notice that the porch was defective, and that it could therefore be held liable for Ms. Russell's injuries. In support of her response, Ms. Russell provided the affidavit of Ms. Carson which stated, in part, "On or about July 14, 2017, during the yearly maintenance inspection of the property, I pointed out to an employee of [Chattanooga

---

[1] Rule 10 of the Rules of the Court of Appeals states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] As will be discussed later in the opinion, the lease agreement between Chattanooga Property and Ms. Carson does not appear in the record on appeal. However, neither party disputes that Ms. Carson entered into a lease agreement with Chattanooga Property in April 2016.

[3] Ms. Russell separately filed a complaint against Ms. Carson and Mr. Jackson which was eventually consolidated with her suit against Chattanooga Property. Neither Mr. Jackson nor Ms. Carson are parties to this appeal; therefore, we limit our discussion of the evidence to that relevant to Chattanooga Property.

Property], Jennifer Digges, that pieces of the porch were rotting and falling off." Attached as exhibits to her affidavit were two photos of the porch and an email from Ms. Carson to Ms. Butler dated April 12, 2018. A hearing was held on Chattanooga Property's motion for summary judgment, after which the trial court requested supplemental briefing from the parties.

On June 19, 2020, Chattanooga Property filed a supplemental motion for summary judgment arguing that it was not the operator of the property; that Ms. Russell was not a third-party beneficiary of the management agreement; and that Ms. Carson's affidavit was inadmissible. On June 25, 2020, Ms. Russell filed a motion requesting the court to hold Chattanooga Property's summary judgment motion in abeyance until the parties completed further discovery, which the trial court granted.

On September 20, 2020, Ms. Russell filed a supplemental response to Chattanooga Property's motion for summary judgment and attached the affidavit of Bruce Mull, a contractor who made repairs to the porch after Ms. Russell's injury. Mr. Mull reviewed photos of the porch area that showed "water damage to the grout" and stated he "would have recommended replacing the porch based on [those] pictures." Chattanooga Property filed a motion to strike Mr. Mull's affidavit and filed a competing and contradictory affidavit of Mr. Mull in which Mr. Mull stated, *inter alia*, "In my opinion, neither the tenant Donna Carson or anyone at Chattanooga Property could look at that porch before the accident and know that someone's foot might go through it."

On October 7, 2020, Chattanooga Property filed a second supplemental motion for summary judgment arguing that it owed no common law duties to Ms. Russell because its duty to repair was based solely on the management agreement. Chattanooga Property further asserted that Ms. Carson was obligated under the lease agreement to provide it with a written request to trigger its duty to repair the porch.[4] Attached to its supplemental motion was Mr. Mull's second affidavit and excerpts of the deposition testimony of Ms. Russell, Ms. Carson, and Mr. Jackson. Ms. Russell filed a second supplemental response arguing that summary judgment should be denied because "there exists a genuine issue of material fact as to whether or not Chattanooga Property Management had notice of the defective porch before the porch collapsed." Ms. Russell attached the July 14, 2017 Inspection Report; excerpts from the deposition of Cindy Altemose, Chattanooga Property's property technician; and the original affidavit of Mr. Mull as exhibits to her second supplemental response.

After reviewing the briefs, affidavits, sworn testimony, written discovery, contracts, and arguments of counsel, the trial court granted Chattanooga Property's motion for summary judgment. Without summarizing the relevant undisputed facts, citing any

---

[4] Again, the lease agreement Chattanooga Property references is not attached to its motion and does not appear in the record.

caselaw, or providing any other context for its ruling, the trial entered the following order on November 17, 2020:

> The Motion for Summary Judgment will be granted because of the limited extent of duty that a property management company such as Chattanooga Property Management, LLC has in this case and further the Court finds that the four exceptions do not apply to this present case.
>
> The Court finds that this case does not involve a common area so the third exception does not apply.
>
> The Court finds that this is not a case involving property leased for purposes involving the admission of the public so the fourth exception does not apply.
>
> With regard to the first two exceptions, to the caveat lessee rule the first exception involves dangerous conditions on the premises existing at the time the lease [was executed and] this property was leased "as is" at the time of the lease; therefore, the first exception does not apply.
>
> As to the second exception, although there is a duty to repair once notice is [sic] been provided, there was no notice provided to the property management company to make a repair and, therefore, there was no contractual obligation to make a repair that ever arose. The Court finds for these reasons a summary judgment is GRANTED. (A copy of the transcript of the ruling is attached as Exhibit A[5] to this order).

---

[5] The excerpt of the court's oral ruling attached as Exhibit A is nearly identical to the written order. Like the written ruling, it references no case law or statutes from which it derives the "exceptions" the court references. In its entirety, the oral ruling states:

THE COURT: Okay. All right. Mr. Henry, if you would prepare the order.
   The motion for summary judgment will be granted because of the limited extent of duty that a property management company such as your client has and that, excuse me, the four exceptions do not appear to be present in this case.
   Certainly, this is not a case involving a common area. So the third exception does not apply.
   This is not a condition involving property leased for purposes involving the admission of the public. So the fourth exception does not apply.
   With regard to the first two exceptions, to the caveat lessee rule the first exception involves dangerous conditions on the premises at the time of the lease and this property was leased as is at the time of the lease; therefore, the first exception does not apply.
   As to the second exception, although there is a duty to repair once notice has been provided, there was no notice provided to the property management company to make a repair and, therefore, there was not [a] contractual obligation to make a repair that ever arose.

On appeal, Ms. Russell raises the following solitary issue: "Whether the trial court erred in not finding that there existed a genuine issue of material fact as to whether the Defendant had actual or constructive notice of the rotting porch before the porch collapsed injuring the Plaintiff."

STANDARD OF REVIEW

This appeal arises from the grant of summary judgment by the trial court. We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery materials that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Id.* at 84 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

---

For those reasons the motion for summary judgment is granted.

- 5 -

ANALYSIS

Ms. Russell's claim against Chattanooga Property is a premises liability cause of action sounding in negligence. To establish a claim for negligence, the plaintiff must establish proof of the following elements: "1) a duty of care owed by the defendant to the plaintiff; (2) breach by the defendant of that duty of care; (3) injury or loss; (4) cause in fact; and (5) proximate or legal cause." *Miranda v. CSC Sugar, LLC*, No. W2017-01986-COA-R3-CV, 2018 WL 3302035, at *3 (Tenn. Ct. App. July 5, 2018) (citing *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). Our focus in this appeal is on the first element: whether Chattanooga Property owed a duty to Ms. Russell, a UPS delivery driver who came upon the porch of the home it managed for Mr. Jackson and leased to Ms. Carson. The existence of a duty of care in a particular case is a question of law. *Hale*, 166 S.W.3d at 716; *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

"[L]egal duty has been defined as the legal obligation owed by a defendant to a plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005). In cases involving leased premises, the general rule in Tennessee is that "'a landlord[6] is not liable to a tenant or a third party for harm caused by a dangerous condition on the leased premises.'" *Richardson v. H & J Props., LLC*, No. W2019-02082-COA-R3-CV, 2020 WL 6158463, at *3 (Tenn. Ct. App. Oct. 21, 2020) (quoting *Lethcoe v. Holden*, 31 S.W.3d 254, 256 (Tenn. Ct. App. 2000)). Over time, however, our Supreme Court has carved out the following exceptions to this general rule:

> The first exception involves dangerous conditions on the premises existing at the time of the lease when the landlord has actual or constructive notice of the condition and the tenant does not. The second exception involves dangerous conditions caused either by the landlord's failure to make repairs it has a duty to make or the landlord's negligence in performing repairs, regardless of whether it had a duty to make the repairs. The third exception involves the dangerous conditions on portions of property over which the landlord has retained control. The fourth exception involves dangerous conditions on property leased for purposes involving the admission of the

---

[6] "Landlord" is defined as "[s]omeone who rents a room, building, or piece of land to someone else." BLACK'S LAW DICTIONARY (11th ed. 2019). Chattanooga Property functioned as a landlord in this case. Pursuant to paragraph 2.10 of the management agreement, entitled "LEASING," Chattanooga Property was entitled to "negotiate lease term, rental amount, or other terms that may be deemed reasonable or customary . . . [and] sign, renew and/or cancel leases; to collect rents due or to become due and give receipts of same; to terminate tenancies; to execute, sign and serve in the name of, or on behalf of, [Mr. Jackson] such notices as deemed necessary by [Chattanooga Property] . . . ."

public.

*Denton v. Hahn*, No. M2003-00342-COA-R3-CV, 2004 WL 2083711, at *6 (Tenn. Ct. App. Sept. 16, 2004) (footnotes omitted). On appeal, Ms. Russell focuses only on the second exception, arguing that Chattanooga Property "had actual or constructive notice of the rotting porch" which triggered its duty to repair the porch.[7]

The second exception comes into play when the landlord has a contractual duty to repair and maintain the leased premises. *Crow v. LeDoux*, No. E2004-01640-COA-R3-CV, 2005 WL 1160629, at *4 (Tenn. Ct. App. May 17, 2005); *see also Helton v. Reynolds*, 640 S.W.2d 5, 9 (Tenn. Ct. App. 1982) ("While the duty to repair is a tort duty, it arises out of the contract which delineates the duty owed."). Furthermore, "where a landlord has agreed to keep premises in repair and, after notice, neglects to repair, he is liable for one injured by the defective condition." *Ghormley v. Carl B. Cook, Inc.*, 756 S.W.2d 264, 267 (Tenn. Ct. App. 1988) (citing *Cotton Press & Storage Co. v. Miller*, 186 S.W.87, 88 (Tenn. 1916)). If "the landlord fails to repair, his conduct toward injured third parties is tortious." *Id.* (citing *Helton*, 640 S.W.2d at 9).

When applying the second exception to the facts of this case, the trial court held: "although there is a duty to repair once notice has been provided, there was no notice provided to the property management company to make a repair and, therefore, there was not [a] contractual obligation to make a repair that ever arose." Apparently, the trial court is referencing the "contractual obligation" outlined in the lease agreement between Ms. Carson and Chattanooga Property as the source for Chattanooga Property's "duty to repair." In its brief, without any citation to the appellate record, Chattanooga Property quotes extensively from the lease agreement to support its arguments that it did not have a duty to repair the porch.[8] As we have mentioned, we have reviewed the record and do not find the lease agreement included. The substance of the lease agreement is essential to the trial court's ruling and to Chattanooga Property's arguments on appeal. While it is typically the appellant's duty to determine the contents of the appellate record (*see* TENN. R. APP. P. 24), when summary judgment is granted in favor of the appellee, the appellee "also has some responsibility for the adequacy of the record." *Range v. Baese*, No. M2006-00120-COA-R3-CV, 2008 WL 186645, at *3 (Tenn. Ct. App. Jan. 22, 2008) (citing

---

[7] Pursuant to Tenn. R. App. P. 13(b), our review of issues will generally extend only to those issues presented for our review. Therefore, we do not review any of the other exceptions the trial court considered. "We will not undertake to search the record and then revise Plaintiffs' brief in its entirety so as to create issues of claimed errors by the Trial Court when the Plaintiffs raise no such specific claimed errors because to do so would have this Court serve as Plaintiffs' attorney." *Murray v. Miracle*, 457 S.W.3d 399, 403 (Tenn. Ct. App. 2014).

[8] In its appellate brief, Chattanooga Property boils down its argument to the following sentence, which highlights the importance of the lease agreement to its case: "The proper rule of law to be applied to Chattanooga Property is not whether Chattanooga Property is liable based upon a common law negligence theory, but rather whether Chattanooga Property fulfilled its obligations under the Lease Agreement."

*Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 713 (Tenn. 2005); *Svacha v. Waldens Creek Saddle Club*, 60 S.W.3d 851, 855 (Tenn. Ct. App. 2001)).

In *Svacha v. Waldens Creek Saddle Club*, the Court of Appeals reviewed a trial court's grant of summary judgment to a defendant in which the lower court relied upon the plaintiff's testimony in rendering its decision. *Svacha*, 60 S.W.3d at 855. The transcript of plaintiff's testimony was not filed in the trial court nor was it included in the record on appeal. *Id.* This Court concluded that the appellee shared some of the burden to ensure that the appellate record contains the evidence considered by the trial court stating, "[i]t is a Rule 56 movant's burden to see that all proof considered by a trial court in arriving at its determination to grant a motion for summary judgment is 'on file.'" *Id.* at 856. The court ultimately held, "[w]ithout this potentially crucial evidence in the record, we cannot determine if the [t]rial [c]ourt properly granted Defendants' motion." *Id.* The *Svacha* court vacated the granting of appellee's motion for summary judgment and remanded the case to the trial court. *Id.*

Here, like the appellee in *Svacha*, Chattanooga Property had a responsibility to "ensure the appellate record is sufficient to determine if the trial court's summary judgment in its favor was proper." *Jennings*, 173 S.W.3d at 713; *see* TENN. R. APP. P. 24(a) (providing that after the appellant has designated portions of the record or transcript for appeal, the appellee may designate additional parts to be included). Just as we cannot consider attachments to a party's brief that were not included in the record on appeal, we will not consider Chattanooga Property's quotations from the lease agreement. See TENN. R. APP. P. 13(c) ("The . . . Court of Appeals . . . may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to rule 14 [regarding motions for consideration of post-judgment facts]."); TENN. CT. APP. R. 6(b) ("No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded"); *Jackson v. Aldridge*, 6 S.W.3d 501, 502 n.1 (Tenn. Ct. App. 1999) (refusing to consider a copy of a transcript and summons appended to appellant's brief because the documents were "not part of the appellate record."). Without the ability to review the entirety of the lease agreement between Chattanooga Property and Ms. Carson, we are unable to undertake a de novo review of the proof the trial court relied upon when granting Chattanooga Property's motion for summary judgment. By failing to include this crucial piece of evidence in the appellate record, the parties have left us ill-equipped to perform our duties on appeal. Therefore, in light of the deficient record, we vacate the trial court's order and remand the case to the trial court for further proceedings consistent with this opinion.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is vacated, and the case is remanded. Costs of this appeal are assessed against the parties equally for which execution may issue if necessary.


_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE